Argued April 4; decided April 29, 1895.

## FLECKENSTEIN *v*. INMAN.
[ 40 Pac. 87.]

1. AGENCY — RATIFICATION.— An assignment of a claim or account by an agent in his own name, and without disclosing his principal, transfers whatever right the principal has, if he subsequently ratifies his agent's act.

2. LIABILITY FOR CONVERSION.—The liability for a conversion of property attaches when the things are seized, and not when they are finally used.

3. APPEAL AND ERROR — PRESUMPTION.— Under the rule that error must be shown, the appellate court will always presume that the trial court properly gave or refused a specified instruction, until the contrary is made to appear by the record.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

This is an action by Fleckenstein and Mayer against Inman, Paulson and Company ( a corporation) to recover for certain saw logs alleged to have been sold and delivered by Matti Makarainen to the defendant between November twenty-ninth, eighteen hundred and ninety-two, and the twenty-first day of February, eighteen hundred and ninety-three. The complaint avers that between the dates mentioned Makarainen sold and delivered to the defendant, at his special instance and request, six hundred and ten saw logs, containing six hundred and sixty-nine thousand seven hundred and sixty-nine feet, of the reasonable value and agreed price of four dollars per thousand, and five hundred and thirty-five saw logs, containing six hundred and thirty-seven thousand four hundred and ninety-four feet, of the reasonable value and agreed price of five dollars per thousand, amounting in the aggregate to the sum of four thousand six hundred and sixty-six dollars, no part of which has been paid; that on February twenty-first, eighteen hundred and ninety-three, Makarainen for value duly sold and as-

signed his claim and demand against the defendant to the plaintiffs, who ever since have been and now are the owners and holders thereof. The answer of the defendant denies that Makarainen sold and delivered to it the saw logs mentioned in the complaint, or that it received any logs belonging to him, except as therein alleged; avers that it has no knowledge or information sufficient to form a belief as to whether Makarainen sold and assigned his claim or demand against it to the plaintiffs in February, eighteen hundred and ninety-three, or at any other time; and alleges that at the date mentioned Makarainen had no claim or demand against it for any sum of money except thereinafter alleged. And as a further and separate defense alleges: "That prior to the twenty-ninth day of November, eighteen hundred and ninety-two, the said Matti Makarainen offered to sell saw logs to the defendant, but the defendant refused to purchase any saw logs whatever from said Matti Makarainen, and has ever since so refused; that, notwithstanding this refusal to purchase any saw logs from said Matti Makarainen, certain saw logs belonging to the said Makarainen were placed in defendant's rafts by the agents of the said Makarainen, without the knowledge or consent of the defendant, and contrary to their direct orders; that said logs of the said Makarainen were brought to the mill of the defendant, in the city of Portland, Oregon, in their said rafts, and were there converted into lumber; that all the saw logs belonging to the said Matti Makarainen, and converted into lumber by the defendant, as above alleged, prior to the twenty-first day of February, eighteen hundred and ninety-three, contained six hundred and fourteen thousand three hundred and five feet; that the reasonable value of said logs was the sum of three dollars per thousand feet, or in all the sum of one thousand eight hundred and forty-two dollars; that prior to

27 OR.— 42.

the twenty-first day of February, eighteen hundred and ninety-three, the defendants had paid to the said Matti Makarainen, for and on account of the said logs, the sum of one thousand eight hundred and twenty dollars and seventy-four cents, leaving a balance due the said Makarainen, on said twenty-first day of February, eighteen hundred and ninety-three, the sum of twenty-two dollars and seventeen cents, which said sum defendants herewith bring into this court and tender the plaintiffs. It is further alleged that since the twenty-first day of February, eighteen hundred and ninety-three, saw logs belonging to the said Matti Makarainen, containing two hundred and seventy-five thousand five hundred and sixteen feet, have been placed in the rafts of these defendants by the agents of the said Makarainen, without defendants' knowledge or consent, and contrary to its direct orders, as hereinbefore alleged, and converted into lumber by the defendants; that the said two hundred and seventy-five thousand five hundred and sixteen feet of saw logs were of the reasonable value of three dollars per thousand feet, amounting to eight hundred and twenty-six dollars and fifty-three cents; that defendants have paid for boomage of said logs the sum of one hundred and fifty-three dollars and fifty-three cents, leaving a balance due for said logs in the sum of six hundred and seventy-three dollars."

At the trial, Makarainen testified in rebuttal that during the month of September, eighteen hundred and ninety-two, he sold, assigned, and transferred all his right, title, and interest in and to the logs which were afterwards received by the defendant to his brother Maketa for the sum of five hundred dollars; that he had no further interest therein after that date, and that when he made the assignment in February, eighteen hundred and ninety-three, to the plaintiffs, he was acting under a

power of attorney for his brother, who subsequently ratified his acts. He also testified that he sold and caused to be delivered to defendant the logs mentioned in the complaint; that he demanded payment therefor, and that all the dealings in relation to the sale and delivery of such logs were had by defendant with him. At the proper time, the defendant requested the court to instruct the jury (1) that if Makarainen "had sold out to his brother before the assignment, he had nothing to sell, and could not convey anything by an assignment to plaintiff," and (2) that "if there was no sale made as claimed by Makarainen to defendant, but that defendant simply used said logs, which were placed in its rafts contrary to its orders, then you should only find for the plaintiffs for the amount of logs used up to the date of the assignment, to wit, February twenty-first, eighteen hundred and ninety-three." These instructions were refused by the court, and the trial resulting in a verdict and judgment in favor of the plaintiffs, defendant appeals, assigning as error such refusal.     AFFIRMED.

For appellant there was a brief by *Messrs. Stott, Boise and Stout,* and an oral argument by *Mr. Raleigh Stott.*

For respondents there was a brief by *Messrs. Dolph, Mallory and Simon,* and an oral argument by *Mr. Joseph Simon.*

Opinion by MR. CHIEF JUSTICE BEAN.

1.   It will be observed from the foregoing statement that no issue was made or tendered by the pleadings as to the ownership of the logs in question, but, on the contrary, it was affirmatively alleged in the answer that they belonged to Makarainen, and that the defendant was indebted to him on the date of the assignment to the plain-

tiffs for the value of the logs received and converted into lumber by it prior to that date, less the amount paid thereon. The only issues in the case were as to the assignment of the account to plaintiffs, the quantity and value of the logs, and whether they were purchased by the defendant as alleged in the complaint, or received by it in the manner and under the circumstances set out in the answer. No offer was made to amend, and, under the pleadings as they stood, the instruction requested by defendant that if Makarainen did not own the logs he could not by an assignment vest any title in the plaintiffs to the claim or demand for the price thereof, was not only outside of the issues, but was in the face of the admission of his ownership in the answer, and for that reason was properly refused. It was also properly refused for another reason. The alleged sale by Makarainen to his brother was made prior to the sale of the logs to the defendant, if a sale was made, and before the receipt of them by defendant, if received as stated in the answer, and all the dealings with defendant were had by Makarainen and in his own name. Defendant regarded him as the owner of the logs, made payments to him thereon, and indeed he was the only party known in the transaction as the owner or claiming any interest therein prior to his disclosures as a witness at the trial. And while it is true he testified that his brother was in fact the owner, he also testified that he was acting as agent in making the assignment to plaintiffs, and that his act in so doing was subsequently ratified and confirmed. The court could not, therefore, have properly instructed the jury that if his brother owned the logs plaintiffs obtained no title by the assignment to them, as it entirely ignored the testimony of Makarainen that he was authorized to make the assignment, and that it was subsequently ratified, which would have given it validity even

if Makarainen did not own the logs himself.  We therefore think the court was clearly right in refusing the instruction as requested.

2.  In support of the other assignment of error it is contended that if the defendant did not purchase the logs of Makarainen, but they were put into its rafts without its consent, it would not be liable for their value until received and used at its mill in Portland, and plaintiffs can only recover in this action for the value of the logs so used and received prior to the date of the assignment to them in February, eighteen hundred and ninety-three. From the bill of exceptions it appears that defendant's evidence tended to show that its manager had some conversation with Makarainen in regard to the purchase of the logs which were then in the boom of the Cowlitz Boom Company, at the mouth of the Cowlitz River, some miles below the city of Portland, but declined to make the purchase because they were not of suitable lengths and sizes, and so informed Makarainen, and instructed the boom company not to place them in its rafts.  In disregard of these instructions, however, the boom company placed the logs in the raft of the defendant, with other logs belonging to it, and they were subsequently brought to its mill in Portland, and sawed into lumber.  A portion of the logs was received at the mill prior to the date of the assignment to plaintiffs, and a portion thereafter, but the record is silent as to when they were placed in defendant's rafts by the boom company, and as to when it took possession and exercised acts of ownership and control over them.  Assuming defendant's theory of the case to be correct, its liability for the value of the logs attached when they were appropriated or converted by it, and not when they were actually used at the mill, if such appropriation or conversion occurred prior to that time. As the record is silent on this question, we are bound, in

view of the rule that error must affirmatively appear, to
assume that the instruction was refused by the trial court
because there was evidence tending to show a conversion
of all the logs before they were received at the mill and
prior to the assignment.    Finding no error in the record,
the judgment is affirmed.

AFFIRMED.

Decided at PENDLETON, July 20, 1895.