Argued March 10, decided April 28, 1908.

## ANDERSON v. AUPPERLE.

[95 Pac. 330.]

SEDUCTION—CIVIL LIABILITY—RIGHT OF ACTION—STATUTES.

1. The common-law action for the seduction of an unmarried female, in the name of the person having the right to her services, for loss of services, is not displaced by Section 85, B. & C. Comp., authorizing a father, or, in case of his death or desertion of his family, the mother, to maintain an action for the seduction of a daughter, though there is no loss of services, and the common-law right of action for the seduction of a granddaughter, who is a member of plaintiff's household, exists.

SAME—DAMAGES.

2. Exemplary damages are recoverable when plaintiff is connected with the female seduced, as to be capable of receiving injury through her dishonor, regardless of the existence or nonexistence of the malice of defendant.

SAME—SPECIAL DAMAGES.

3. In an action for the seduction of a granddaughter, allegations in the complaint demanding special damages for injuries to plaintiff in her reputation and in that of her family and for injuries to her feelings are proper.

SAME—EVIDENCE—ADMISSIBILITY.

4. The child born to the female seduced may be exhibited to the jury, though the child is under three months of age.

SAME—IMMATERIAL EVIDENCE.

5. The question whether the sister of the female seduced, who also lived in plaintiff's family, objected when the female seduced went with other men than defendant, was immaterial.

SAME.

6. The testimony of a witness who had lived across the street from plaintiff's home for four years and had been well acquainted with plaintiff and her granddaughters, who lived with her for over two years, that he had never seen defendant with the granddaughter seduced, was properly excluded.

EVIDENCE—HEARSAY.

7. In an action for the seduction of plaintiff's granddaughter, the testimony as to what a sister of the female seduced had said, concerning the conduct of the female seduced, was properly excluded, in the absence of the laying of a proper foundation for the impeachment of the sister as a witness.

WITNESSES—OPINION OF WITNESS—REPUTATION—KNOWLEDGE.

8. The statement of a witness in an action for seduction that he knew that the reputation for chastity of the female seduced was bad, based on what the witness had observed, and not on what he had heard others say, was properly excluded; the witness not having proved his qualification to testify on the subject.

SEDUCTION—CIVIL LIABILITY—EVIDENCE.

9. In an action for the seduction of an unmarried female, evidence that she swore was inadmissible, since swearing by an unmarried female, would not necessarily indicate a lewd character.

EVIDENCE—OPINION EVIDENCE.

10. In an action for the seduction of an unmarried female, the testimony of a witness that the female seduced and one F. drank beer on one occasion, based on his opinion of what was drank, was properly excluded.

SEDUCTION—INSTRUCTIONS.

11. Where on a trial for seduction there was no competent evidence of the reputation for chastity of the female seduced, the court did not err in confining the jury, when determining the issue of chastity, to direct testimony of acts of sexual intercourse, or to circumstantial evidence from which such acts might be inferred.

APPEAL—REVIEW—INSTRUCTIONS—PRESUMPTIONS.

12. Where the record does not purport to contain all the evidence, and is silent on the question whether there was evidence on which to predicate an instruction, the appellate court will presume there was evidence sufficient to make the instructions relevant.

TRIAL—INSTRUCTIONS—SUFFICIENCY—OBJECTIONS.

13. In an action for seduction, an instruction that, though a woman has once been of unchaste character, she has the right to reform, and when there has been a reformation she may again be a subject of seduction, etc., is not, on a general exception, open to the objection that it is deficient in fullness, and the party excepting must call the attention of the court to the particular grounds to which he objects, so that the court may have an opportunity to make the correction.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. COMMISSIONER SLATER.

Plaintiff sues as one standing in the place of a parent for the seduction of her granddaughter, Viletha Thurman, by defendant, which occurred on or about January 22, 1906.

It is alleged that Viletha was then under 18 years of age, and ever since 1893 had been a member of plaintiff's household, in consequence of the desertion and abandonment in 1891 by her father of his family, and the death of her mother in 1893, and that plaintiff was entitled to the services and society of her granddaughter; that as a result of the seduction, Viletha became sick and pregnant and unable to render any services to plaintiff; that in addition thereto plaintiff would thereby be compelled to expend more than $200 in nursing and taking care of her granddaughter during the latter's pregnancy and sickness; and that plaintiff had been injured in her reputation and in that of her family and wounded in her feelings and disgraced to her damage in the sum of $10,000.

Defendant moved to strike out that part of the complaint referring to special damages, and upon a denial thereof he demurred on two separate grounds, viz.,

(1) incapacity to sue, and (2) insufficient allegation of facts to support the action. The demurrer also having been overruled, defendant answered by a general denial of the whole complaint with an affirmative defense that Viletha Thurman was not at any of the times mentioned in the complaint a chaste or virtuous child or woman. Issue being joined by a reply, a trial was had before a jury, and at the close of plaintiff's case defendant moved for a nonsuit, upon the ground that plaintiff had not legal capacity to sue, that she had not proved facts sufficient to entitle her to a verdict, and that there was not sufficient proof of the seduction. The motion being denied, defendant offered his testimony, whereupon the jury returned a verdict in plaintiff's favor. From the judgment entered thereon defendant appeals, assigning as errors the overruling of his motion and demurrer, besides numerous exceptions taken to the rejection of testimony, and the giving of and refusing to give certain instructions.                                    AFFIRMED.

For appellant there was a brief over the names of *Weatherford & Wyatt* and *Carson & Cannon*, with an oral argument by *Mr. A. M. Cannon.*

For respondent there was a brief over the names of *Jeffrey & Lenon* and *Mr. Myron E. Pogue*, with oral arguments by *Mr. John A. Jeffrey* and *Mr. Pogue.*

Opinion by MR. COMMISSIONER SLATER.

1. At comomn law the only mode in which an action for seduction could be maintained is by bringing such action in the name of some person having a right to the services of the person seduced, the gist of the action being loss of service: 19 Ency. Pl. & Pr. 401; 4 Sutherland, Damages, § 3755. The mere relation of parent and child will not give a right of action for the seduction of an unmarried female. That of master and servant, either actual or constructive, must exist. If such a relation exists, it matters not to the cause of action whether the plaintiff

be parent, or merely stands in the place of a parent: 4 Sutherland, Damages, § 3758. Such are the rules of the common law, and it is not contended here by defendant that under these rules, if they have not been superseded by statute in this State, plaintiff may not recover for the damages alleged. But it is argued by him that by Section 35, B. & C. Comp., as interpreted and construed by this court in *Patterson* v. *Hayden,* 17 Or. 238 (21 Pac. 129: 3 L. R. A. 529: 11 Am. St. Rep. 822), the right of recovery is limited to the father, or, in case of his death or desertion of his family, to the mother, for the seduction of a daughter, and that loss of service can no longer in this State be the basis for an action of seduction. At any rate it is claimed that since that decision a person not named in the statute suing for the seduction of a female ought to be limited to a recovery of actual compensatory damages for the loss of services, and be denied exemplary or punitive damages. The common-law remedy for loss of service is not displaced or superseded by a statute authorizing a father to maintain an action for the seduction of his daughter, without allegation or proof of loss of service (*Shellman* v. *Frymire,* 9 Ky. Law Rep. 894; *Hancock* v. *Wilhoite,* 1 Duv. [Ky.] 313), especially in the absence of any expression of a legislative intent that such shall be its effect: 25 Am. & Eng. Ency. Law (2 ed.), 201. Such statutes are usually treated as cumulative in their effect; but under any view or construction of this statute the common-law right of action of persons who stand in the relation of parent to the seduced female could not be affected one way or the other, for they are not mentioned in the statute.

2. As to the extent of the recovery in an action for seduction of a female, the plaintiff may recover exemplary damages when he is so connected with her as to be capable of receiving injury through her dishonor, regardless of whether malice existed. The act of seduction is necessarily willful.

3. In estimating the injury the jury may take into consideration, besides the loss of services and disbursements for medical treatment and other necessary expenses, the wounded feelings and affections of the parent, the wrong done to him in his domestic and social relations, the stain and dishonor brought upon his family, and the grief and affliction suffered in consequence of it, and give damages accordingly. If the action is brought by any other person than a parent, standing in the relation of parent, it will be governed by the same principles and rules of evidence: 4 Sutherland, Damages, § 1283. Hence no error was committed in overruling defendant's motion to strike out parts of the complaint, or his demurrer thereto.

4. During the course of the trial, and while Viletha Thurman was upon the witness stand in plaintiff's behalf, she was requested to bring forward the baby to which she had testified she had given birth, and of which the defendant was the father. The child, being then a little under three months of age, was offered and received in evidence for the inspection of the jury, over the objections of the defendant. It is strongly urged by defendant's counsel that it is error to expose, as an exhibit before the jury, a child less than three months of age for the alleged purpose of proving a resemblance to the defendant. The argument is that, "although a resemblance between the parties, properly proved, is some evidence upon the issue, but during the first few weeks or even months of a child's existence it has that peculiar immaturity of features which characterize it as an infant, and that it changes often and very much in looks and appearance during that period" (*Clark* v. *Bradstreet,* 80 Me. 454: 15 Atl. 56: 6 Am. St. Rep. 221), and that such evidence, when deduced from the exhibit of an immature child, "is too vague, uncertain, and fanciful a nature to be submitted to the consideration of a jury" (*Hanawalt* v. *State,* 64 Wis. 84: 24 N. W. 489: 54 Am. St. Rep. 588). There is, however, a decided conflict of authorities upon

the admissibility of such evidence, the adjudications rang-
ing from a total exclusion thereof to an unqualified ad-
mission.

We shall not attempt a review of the cases to determine
the correct principle of law which should govern the ad-
mission of such evidence, or to ascertain where the weight
of authority lies; but it will be sufficient for that purpose
to quote from the recent and most able opinion of Mr.
Chief Justice PARSONS in the case of *State* v. *Danforth,*
73 N. H. 215 (60 Atl. 839: 111 Am. St. Rep. 600), de-
cided in 1905. After reviewing most of the cases on this
point, he says, at page 219 of 73 N. H., page 841 of 60
Atl. (111 Am. St. Rep. 600), of the opinion:

"All the authorities concede, in effect, that there may
be cases in which the maturity of the child, or the char-
acter of the peculiarities relied upon as a ground of re-
semblance or dissimilarity, render the child competent
evidence on the issue of paternity. The objections urged
to the competency of the evidence go rather to its weight
than to its relevancy. When comparison is made to de-
termine a difference of race or otherwise, greater weight
may properly be given to the evidence; but the ground
of its relevancy is the same as when the comparison is
between individuals. The objection resting upon the
immaturity of the child is merely to the definiteness of
the proof. If all individuals developed by a fixed rule, it
might be possible to fix upon a certain age below which
the child should not be exhibited as evidence on this issue.
If there were such an age, its scientific determination
would involve the finding of a question of fact upon physi-
ological evidence—an investigation which this court has
no means or power to make. Whether the features of a
child are sufficiently developed to authorize its use as
evidence by comparison with the alleged parent, is purely
a question of fact. A court of law cannot determine this
question of fact as a rule of law without evidence, upon
their personal impressions, without basing their judg-
ment upon a 'vague, uncertain, and fanciful' foundation.
Conceding that resemblance properly proved is an evi-
dentiary fact competent for consideration in connection
with other evidence upon the issue of paternity, and that
in certain instances or situations the individuals them-

selves may furnish evidence of such resemblance, the
question whether the evidence offered by one of the in-
dividuals—the child—is sufficiently definite to have
weight on the question in a particular case is a question
of remoteness determinable at the trial term: *Pritchard*
v. *Austin,* 69 N. H. 367, 369 (46 Atl. 188) ; *Morrill* v.
*Warner,* 66 N. H. 572 (29 Atl. 412) ."

The cases on the subject are quite fully collected in
Wigmore, Evidence, § 166, and in a note to *State ex rel.*
v. *Harvey,* 52 L. R. A. 500. The conclusion of those au-
thors that the weight of authority coincides with the rule
announced in *State* v. *Danforth,* 73 N. H. 215 (60 Atl.
839 : 111 Am. St. Rep. 600), appears to be sustained by an
examination of the cases; and, as it meets our views, we
must conclude that no error was committed when the
evidence was received.

5. It was immaterial to the issues of the case whether
or not Rena Richter, an elder sister of Viletha Thurman,
who was also living in plaintiff's family, objected when
the latter was going with men other than defendant; and
the question of that import, propounded to her on her
cross-examination by defendant's counsel, was not proper
cross-examination.

6. The fact that defendant's witness, Moore, had never
in his life seen defendant with Viletha, although the wit-
ness had lived just across the street from plaintiff's home
for four years, and had been well acquainted with plain-
tiff and her granddaughters for two and one-half years,
as he testified, did not tend to disprove the possibility
or probability that defendant had been with plaintiff's
granddaughter, as alleged in the complaint; and there-
fore such evidence was immaterial and was properly ex-
cluded.

7. Error is claimed on the alleged ground that, on plain-
tiff's motion, the court struck out that part of the testi-
mony of Miss Roland where, on examination in chief by
defendant's counsel, she related what was said between
the plaintiff and Rena Richter with regard to the con-

duct of Viletha. The question addressed to the witness
called for what Mrs. Anderson, the plaintiff, had said to
this witness concerning that matter, but the answer con-
tained a statement by Rena Richter to the plaintiff. It
was this latter statement, and not what was said by
Mrs. Anderson, that was excluded by the court on plain-
tiff's motion. What Rena Richter may have said would
not bind the plaintiff as an admission against her in-
terest, and it would not be competent as impeachment
of Rena Richter, because no proper foundation had been
laid for the introduction thereof.

8. This witness, on her direct examination, also testi-
fied that she knew the general reputaion of Viletha Thur-
man for chastity in the neighborhood in which she lived
prior to January 22, 1906, and that it was bad; but on
cross-examination she admitted that her opinion was
formed from what she had observed, and not from what
she had heard others say, and that she had not talked
to anybody in particular about the character of Viletha
Thurman except just after this trouble began. On plain-
tiff's motion the statements of this witness as to the char-
acter of Viletha Thurman were stricken out, and error is
assigned on that account; but, if evidence of that charac-
ter was admissible for any purpose, the witness had not
proved herself qualified to testify upon that matter.

9. J. W. Parrish, having testified in defendant's behalf
that he had seen Viletha Thurman out upon the streets
as late as 11 o'clock at night with strange men, was asked
what kind of language he had heard Viletha use, as to
swearing or anything of that kind. On plaintiff's ob-
jection the court excluded the testimony, with the re-
mark: "That does not affect her chastity." What
answer was expected to this question by defendant's
counsel does not appear; but, judging only from the form
of the question, and assuming that the witness, if per-
mitted to testify, would have said that Viletha swore, we
should say that swearing by an unmarried female would

not necessarily indicate a lewd or lascivious character. It would be an index of her general conduct as to civility or rudeness, and might be material on the question of damages; but it was not offered specifically for that purpose, as the remark of the court clearly indicates.

10. The exclusion of the testimony of Elmer Russell is assigned as error. He testified that he had seen Viletha in company with one Fletcher, and that they were drinking beer, by the looks of things, at the schoolhouse; that he had seen them coming from the way of the Gallon House (meaning a place where beer was sold) with a bucket, which the witness took to contain beer; that they went in back of the schoolhouse and behind a pile of four-foot wood and out of sight. On plaintiff's objection that the witness was giving merely his opinion as to what the parties were drinking the court struck out this testimony; and that ruling we think was correct.

Defendant's counsel have not urged as error the denial of his motion for a nonsuit, and, assuming that it has been abandoned, we have not considered it.

11. Defendant requested the court to give the following instruction:

"In order to determine whether or not the plaintiff was a chaste female at the time of the alleged seduction, it will be your duty to carefully consider all the evidence, if any, throwing light upon that subject, such as specific acts of wantonness or incontinence, or general behavior tending to show wantonness or vulgarity. It will also be necessary to consider the evidence introduced before you of the general reputation of the plaintiff's granddaughter for virtue and chastity, and if, after weighing all such evidence introduced by the defendant and by the plaintiff on the subject of the moral character, chastity, and virtue of the woman, Viletha Thurman, you come to the conclusion that the plaintiff's granddaughter was not at the time of the alleged seduction a chaste female, then, as I have heretofore said, your verdict must be for the defendant."

The court refused the instruction requested, but instructed the jury as follows:

"You are not to consider the attempts to show the reputation of the girl, Viletha Thurman. The witnesses who attempted to testify on that subject were not qualified to so testify, within the rules of the law; and I renew the instruction which I gave to you during the trial: 'You are not to consider any of that attempt to prove her reputation.' The evidence on that part of the case to prove her chastity must be confined to proving acts of sexual immorality on her part. They are entitled to prove that by direct testimony, or by circumstances which shall convince you by preponderance of evidence that she was guilty of actual sexual intercourse with some other man than the defendant prior to the charge named in the complaint."

To the refusal to give, and the giving of these instructions, defendant severally objected, and the question attempted to be raised is whether evidence of general reputation for unchastity is available in a case of this kind as proof of actual unchastity. But whether the unchastity of Viletha Thurman at and prior to the time of the alleged seduction may be established by evidence of her general reputation for virtue and chastity, as contended by defendant's counsel in the requested instruction, or whether he is confined to direct testimony of sexual immorality on her part, or to proof of circumstances from which the fact may be fairly and reasonably inferred, as the jury were instructed by the court, need not be determined, for there was no competent evidence of her reputation for unchastity before the jury to be considered by them. The witnesses who attempted to testify on that subject were not qualified within the rules of law so to testify; and, as we have held, the court rightly rejected the proffered testimony. Therefore no error was committed by the court in confining the jury, when determining the issue of chastity, to direct testimony of acts of sexual immorality by Viletha Thurman, or to circumstantial evidence from which the fact might be inferred.

12. A general exception was saved to the giving of the following instruction:

"I also charge you that, although a woman has once been of unchaste character, she has a right to reform, and, if there has in fact been reformation, she may be again a subject of seduction"—and to this, also, of the same import: "If you find that Viletha Thurman was of chaste character at the time of the charge named in the complaint, either on the ground that she had never had sexual intercourse, voluntarily, with any other man than defendant prior to this time, or on the ground that, although she was at one time unchaste, she had reformed, and, if you further find that the defendant seduced her, within the rules I have given you, you will proceed to consider the damages which should be awarded to the plaintiff."

Two reasons are now urged to support the defendant's challenge to the propriety of these instructions. The first one is that there was no evidence of a reformation by Viletha Thurman on which to base this instruction. The record, however, does not purport to contain all of the evidence, nor any more than plaintiff's evidence in chief; and there is no declaration or statement in the bill of exceptions to the effect that there was no such evidence submitted. When the record is silent it will be presumed. in support of the judgment, that evidence was given of a nature to make relevant the instruction: *Fleckenstein* v. *Inman,* 27 Or. 328 (40 Pac. 87) ; *Bingham* v. *Lipman, Wolfe & Co.* 40 Or. 363 (67 Pac. 98).

13. The second reason urged is that the charge as given is too deficient in substance to be a correct statement of the legal principle sought to be applied, because it is said, *arguendo,* that the court failed to define what would constitute reformation sufficient to amount to a defense. The instruction is not entirely free from such criticism, but it correctly states a sound principle of law. At least we cannot say that it asserts an erroneous proposition of law as applied to the case, for the facts as to the assumed reformation are not before us. The gist of the criticism is, that the instruction is deficient in fullness and does not go far enough in this respect; that it ought

to have declared that the plaintiff's granddaughter must have honestly abandoned and ceased her unchastity for a reasonable time before the alleged seduction took place. This defines what is meant by reformation. The necessity and propriety of such particularity would depend upon the facts as disclosed by the testimony, and under such circumstances a general exception is not sufficient upon which to base an assignment of error, but it was incumbent upon the party excepting, to call the attention of the court to the particular grounds upon which he objects, so that the trial court may have an opportunity to make the correction sought: *Kearney v. Snodgrass,* 12 Or. 311 (7 Pac. 309) ; *Nickum* v. *Gaston,* 24 Or. 380 (33 Pac. 671, 35 Pac. 31) ; *Farmers' Nat'l Bank* v. *Woodell,* 38 Or. 294 (61 Pac. 837, 65 Pac. 520) ; *McAlister* v. *Long,* 33 Or. 368 (54 Pac. 194).

A number of other errors have been assigned and urged by defendant's counsel; but, after a careful examination of each of them we are of the opinion that they are without merit, and will not therefore be considered in detail.

It follows that the judgment must be affirmed.

AFFIRMED.