Argued March 29, decided June 8, rehearing denied July 27, 1909.

## MAHON v. RANKIN.

[102 Pac. 608; 103 Pac. 53.]

EVIDENCE—ADMISSIONS—CONCLUSIVENESS.

1. In an action for commissions earned by the purchase of land for defendants, where plaintiff claimed that the agreement was that he should receive $1 an acre when he secured options on the land and deposited the deeds in escrow, but defendant claimed that he was not to receive any commissions unless defendant exercised his option and resold the land, and defendant introduced letters from plaintiff, written after plaintiff had stated in another letter to defendant that he had purchased the land, and considered his part of the contract fulfilled, which letters related to securing control of certain land, the options on which had expired after plaintiff had obtained them, and were introduced as being admissions against plaintiff's interest and tending to show that he had an interest in the disposal of the option lands, plaintiff could explain the letters and show that they related to another contract made with defendant; written admissions not being conclusive, but being subject to rebuttal or explanation.

EVIDENCE—COMPETENCY—INTENT.

2. The intent of a person in doing an act, or in uttering a declaration, when material, may be testified to by the actor, whether he is a party or not, and however inconclusive or inconsistent his testimony may be; that going only to its weight.

BROKERS—ACTIONS FOR COMPENSATION—ADMISSIBILITY OF EVIDENCE.

3. In an action for commissions, claimed to have been earned by pur-
chasing land for defendant, where defendant claimed that plaintiff received
a commission from the seller of a tract in violation of his relations as agent,
which commission plaintiff claimed was received for defendant's benefit and
by his authority, evidence was admissible of the employment and the extent
of the authority of another, employed by defendant to assist plaintiff in
securing the options, who, by plaintiff's direction, communicated to defendant
the proposed terms for the purchase of the tract in question, but the compen-
sation he was to receive from defendant was immaterial.

EVIDENCE—RELEVANCY—FACTS FORMING PART OF TRANSACTION.

4. Where, in an action for commissions for buying land for defendant,
plaintiff offered testimony as to an arrangement by defendant with another to
assist plaintiff in buying the land, in order to show that defendant authorized
the purchase of a tract upon certain terms, which were communicated to
defendant by such other testimony in connection with such evidence as to
the compensation defendant was to pay the other, was not admissible under
Section 702, B. & C. Comp., permitting the whole of an act or declaration to be
inquired into by the other party, where a part thereof is given in evidence by
one party; defendant not having offered any part of the transaction with
such other in evidence or testified as to the terms of his employment.

EVIDENCE—RELEVANCY—FACTS FORMING PART OF TRANSACTION.

5. In order to be admissible under Section 702, B. & C. Comp., permitting
the whole of any declaration or conversation on the same subject to be
inquired into by the other party, where a part thereof is given in evidence by
one party, the rest of the conversation must be material, and affect in some
way the part already given in evidence.

APPEAL AND ERROR — HARMLESS ERROR — ADMISSION OF EVIDENCE —
    PREJUDICIAL EFFECT.

6. In an action for commissions earned by the purchase of land for
defendant, where plaintiff claimed that the agreement was to pay $1 an acre
when he secured options on the land and deposited the deeds for defendant,
but defendant claimed that plaintiff was not to receive any commission unless
he exercised the options and resold the land, error in admitting irrelevant
testimony that defendant hired another to assist plaintiff, and promised to
pay him a certain sum, was not prejudicial, where defendant testified that
such compensation was also contingent upon his acceptance of the options
and resale of the land, in view of defendant's contention as to the contract
with plaintiff.

PRINCIPAL AND AGENT—ACTIONS—JURY QUESTION—AUTHORITY.

7. Where the authority of an agent is disputed, the question is for the
jury.

BROKERS—AUTHORITY—QUESTION FOR JURY.

8. While the question of the authority of an agent is for the jury, where
it is disputed, the court should declare whether a given act is in excess of the
agent's authority, so that, in an action for commissions for purchasing land
for defendant, the court properly instructed that any payments made by
plaintiff to sellers in excess of the amount limited by defendant was without
authority.

APPEAL AND ERROR—HARMLESS ERROR—FAVORABLE TO COMPLAINING
    PARTY.

9. Error, in an instruction in assuming as a fact that the contract of
agency was as contended by defendant, was favorable to him, and he cannot
complain thereof.

TRIAL — INSTRUCTIONS — REQUESTS — NECESSITY — ADDITIONAL INSTRUC-
TIONS.

10. In an action for commissions claimed to have been earned by pur-
chasing land for defendant, an instruction that, if plaintiff exceeded his
authority by making a larger first payment, or paying more per acre, than
authorized, and defendant knew all the material facts in connection with
plaintiff's acts, and accepted the benefits resulting therefrom, defendant by
his conduct ratified plaintiff's unauthorized act, being the correct rule, if
defendant desired an instruction as to what constituted the material facts as
to plaintiff's acts in excess of his authority, he should have expressly called
the court's attention to the omission.

BROKERS—ACTIONS—PLEADING—RATIFICATION.

11. In an action for commissions, claimed to have been earned by the
purchase of land for defendant, where the latter claimed that plaintiff acted
in violation of his agency by paying a higher price per acre than he was
authorized, etc., allegations of the complaint that plaintiff notified defendant
from time to time of the purchases, the purchase price, amounts of payments,
etc., and defendant, knowing of the purchases and terms thereof, ratified
them, as well as the allegations of the reply that the payments of the land in
excess of the price thereof were made with defendant's knowledge, and
ratified by him, sufficiently alleged ratification.

PRINCIPAL AND AGENT—ACTIONS—PLEADING—RATIFICATION.

12. An allegation that the principal, with full knowledge of the facts,
ratified the agent's unauthorized act is sufficient, without setting out how it
was ratified.

EVIDENCE—PAROL EVIDENCE.

13. In an action on a parol contract, letters and telegrams passing between
the parties some 2½ months after the making of the contract are not primary
evidence of the terms thereof though they contain references as to what the
parties understood as a part of the contract, but are admissible as admissions
of what had been previously concluded between them, subject to explanation
by them.

From Lane: LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE SLATER.

This is an action by H. C. Mahon against M. B. Rankin
to recover $39,692.15, and interest thereon from Jan-
uary 15, 1907, at the rate of 6 per cent per annum,
claimed to have been earned as a commission for the pur-
case of 40,898.65 acres of timber land in Lane, Benton,
and Douglas counties, under a special oral agreement
made with defendant about November 1, 1906. The
substance of the material averments of the amended com-
plaint are: That the plaintiff was to procure from the
several owners of such lands contracts for the sale
thereof to defendant, at such prices as plaintiff should
agree to pay therefor to the owners, paying part and

procuring a valid agreement to convey to the defendant upon the payment by him of the balance of the purchase price, at a time to be fixed by plaintiff and the owner in such contract; that defendant was to furnish money to make the first payments, and plaintiff was to cause deeds to be executed by the owners sufficient in form to convey the legal title to defendant, and have them deposited in escrow with the First National Bank of Eugene, Oregon, with directions to deliver the same to defendant on payment of the balance of the purchase price; that defendant was to make such final payments at their maturity, and pay plaintiff $1 for each and every acre so purchased by plaintiff; that pursuant to the terms of the contract, defendant furnished and advanced to plaintiff $46,200 to enable him to make advance payments, and with which, prior to January 15, 1907, he made contracts to purchase 40,898.65 acres of timber land, and caused deeds thereto to be executed in defendant's favor, and to be deposited in said bank, so that there became and was due plaintiff $40,898.65, of which defendant had paid plaintiff $1,206.50, and had refused to pay the balance; that from time to time during the performance of the contract by plaintiff, and as the contracts to purchase were procured from owners, plaintiff notified defendant of the purchases, the price to be paid, the dates of payment and delivery of the deeds, all in ample time before the expiration of the time for payment; and that from time to time the defendant, being informed, and well knowing, of the said purchases and of the terms thereof, ratified and approved the same, but that defendant made final payments and accepted and received deeds for only 1,330 acres of the land and owns the same, and that he did not, and has not, completed the payments on the balance thereof.

The answer admits the making of a contract with plaintiff respecting the purchase of that amount of timber land, but denies the terms thereof to be as alleged in the complaint. In substance, defendant avers that the

lands were not to be purchased by him except at his
option; that by the terms of their agreement plaintiff
was limited to contract with the owners to pay them no
more than $14 per ·acre, ·and no more than $50 as a
deposit for each quarter section, and for his services
plaintiff was to have a fee of $1 an acre, payable only
upon the contingency that defendant should complete the
purchase of all of the land and sell it to certain prospec-
tive purchasers, whom defendant then had in contempla-
tion, and, in ·case he failed or refused to complete the
purchase, and failed to dispose of the land, then plaintiff
was to receive nothing for his services, but it was
admitted that defendant was to advance necessary funds
for the purpose of securing options in the manner alleged
by him, and that for such purpose he had advanced to
plaintiff a total of $46,200; that he had paid plaintiff
$1,000, but denied that it was upon the contract alleged;
that plaintiff had received and retained out of the moneys
advanced to him a balance of $206.50, and, by failure to
deny, it was admitted that defendant had made final pay-
ments, and had received and accepted deeds for 1,330 acres
of land, but had failed to make payments on the balance
of the total amount of 40,898.65 acres. As a separate
defense, and as a counterclaim, defendant has alleged the
terms of the agreement as previously stated by him, and
that in pursuance thereof he advanced the sum of
$46,200, but that plaintiff, in violation of his power of
agency, and without the authority or knowledge of the
defendant, paid, out of the money advanced to him, to
sixty-one different owners, whose names are set forth in
the answer, together with the several amounts paid,
aggregating $7,070, as a deposit upon ·an option to pur-
chase at a rate exceeding $14 per acre, and that he like-
wise paid to eight other persons the several amounts
stated, aggregating $975, as a deposit upon said option,
wherein he exceeded the authorized deposit of $50 per
quarter section, but did not exceed $14 per acre, the total

purchase price; that plaintiff had on hand, and unexpended, the sum of $206.50, mentioned in the complaint, and the further sum of $1,000 advanced to him, which was to be used, but was not used, by him in procuring options, making a total counterclaim of $9,251.50; that defendant failed to sell the land, and failed to complete the purchase of the same, and that the options and money advanced thereon were forfeited to the owners; that plaintiff had not repaid defendant any part of the amount for which a counterclaim is made. A second counterclaim was also made by defendant, but, as it was admitted by his counsel during the trial that he was not entitled to recover thereon, it need not be stated. As a bar to a recovery a third defense was made, to the effect that plaintiff, while acting as defendant's agent in securing options to purchase, had made an agreement severally with Snodgrass and other owners of lands, whereby plaintiff was employed to act as the agent of such owners severally in the sale of their lands to defendant, and was to be paid and receive from such owners severally a commission of 5 per cent on the purchase price in case the options were exercised by, and sales consummated with, defendant.

The reply denies the alleged limitations upon plaintiff's authority, and that he made the payments set forth in the answer without the authority or knowledge of the defendant, or in violation of his agreement or power of agency; but he alleges that they were made with the authority and knowledge of the defendant, who, well knowing that such payments had been made, duly ratified them. As to the plea in bar, set up in the third defense, the plaintiff denies the same, and further pleads that the contracts for a commission, mentioned in the answer, were made with T. G. Hendricks, who, for himself and others, had control of twenty-two quarter sections of land, which were agreed to be purchased for defendant at $20 per acre, with 5 per cent off as commisison, making

the price thereof to defendant $19 per acre, and that
plaintiff did not receive any profit therefrom to himself,
but that defendant was to receive, and did receive, the
contracts therefor at $19 per acre. A trial being had
before a jury, a verdict was returned in plaintiff's favor
for the amount demanded, and from the judgment en-
tered thereon defendant has appealed.          AFFIRMED.

For appellant there was a brief over the names of
*Messrs. Coovert & Stapleton, Mr. William D. Fenton* and
*Mr. James E. Fenton,* with an oral argument by *Mr.
William D. Fenton.*

For respondent there was a brief over the names of
*Mr. Martin L. Pipes, Mr. George F. Skipworth* and *Mr.
George A. Pipes,* with oral arguments by *Mr. Martin L.
Pipes* and *Mr. Skipworth.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. The first error assigned for a reversal of the judg-
ment is based upon an exception to the admission of the
testimony of plaintiff given in rebuttal, and in explana-
tion of his written declarations against his interest in a
series of letters and telegrams addressed to the defendant.
They were dated after January 15, 1907, on which date
plaintiff had addressed a letter to the defendant, in which
he had stated, in substance, that he considered his part
of the original contract fulfilled, inasmuch as the land
had been purchased, the deeds secured, and placed in the
bank according to agreement, and that he considered his
commission of $1 per acre earned, and that he would
treat any work done after January 14th as under a new
agreement. He therein offered to continue his services
with defendant, and states terms. But, on the 18th,
defendant replied, declining the offer, and denying, in
effect, plaintiff's claim of a completed contract. In the
meantime, on the 16th, plaintiff telegraphed defendant in
relation to "fifteen thousand acres in larger tracts with

very favorable prospects of control on reasonable terms," and on the 17th addressed him a lengthy letter about the future control of 1,807 acres owned by one party, which had been under contract at $15 per acre, but the time had expired; and about other land owned by other parties. Now, after plaintiff's attention had been particularly directed to the letter of the 17th, he was requested by his counsel to explain whether he had any conversation or negotiations with Rankin concerning his employment under another contract, different from the one on which the action was brought, and whether, in contemplation of these negotiations being consummated, he undertook to do anything under them. The answer to each inquiry was, "I did." The witness was then conducted through all of his subsequent written communications and telegrams relating to further contracting for, or controlling, timber lands, or the sale thereof to other parties, and in each instance referred his acts and declarations to a supposed or contemplated new contract with defendant, made after April 15th, his answers in some instances being opposed to, or contradicting, the natural inference to be drawn from his written declarations. The objection interposed was that such testimony was incompetent and immaterial, and that, so far as it was material, it tended to dispute the writings referred to and introduced in evidence. It is argued that such writings cannot be explained, varied, or modified by oral testimony, and therefore it is incompetent. The letters and telegrams referred to were introduced in evidence by defendant, not to prove the terms of the contract alleged by him in his answer, but as containing declarations made by the plaintiff against his interest, while in the performance of the contract sued upon, and tending to show that the original contract upon which the action is based had not then been fully performed by plaintiff, and also that plaintiff had some further interest in the ultimate disposal of the optioned lands. Therefore such declarations

stand upon the basis of admissions in writing, but, as a general rule, such admissions, although in writing, are not conclusive any more than if orally made, and therefore the party making them may prove the contrary, or show that they were made by mistake: 1 Enc. Ev. 396; *State* v. *Blodgett,* 50 Or. 329 (92 Pac. 820) ; *Gradwohl* v. *Harris,* 29 Cal. 150. The defendant, in support of his contention, having produced testimony relating to transactions subsequent to the time of the completion of the contract as alleged in the complaint, the plaintiff is not for that reason precluded from explaining such transactions, if he can, and referring the doing of such acts and the statements made by him to another or different contract.

.2. The second error relied upon is of the same nature, but more definite and specific. Plaintiff was asked: "You may state whether or not in using the word 'we' in relation to your services in this matter of Mr. Rankin's you indicated, or meant to indicate, to him that you had any other interest than your dollar an acre." Objection was made that the testimony sought was incompetent, and that the letter containing the declaration speaks for itself. The objection being overruled, plaintiff answered that he had not thought of indicating to Mr. Rankin that he had any interest in the transaction beyond the carrying out of his contract for a commission of $1 an acre. In addition to the point just passed upon, the objection also involves the propriety and mode of the proof of an intent. It seems to be the general rule in this country that whenever, in either civil or criminal cases, the intent of a person in the doing of an act, or in the uttering of a declaration, becomes material, such person, whether a party to the cause or not, may testify directly as to what his intention was in the given instance: 7 Enc. Ev. 596. Such testimony is admissible, no matter how inconclusive, unsatisfactory or inconsistent it may

be, as such characteristics affect only its weight: *Pope v. Hart*, 35 Barb. (N. Y.) 630.

3. C. E. Ireland was permitted to testify, over defendant's objection, concerning the terms of a contract made between him and Rankin about November 16, 1906, whereby the former was to help plaintiff in the performance of the contract involved in this action. Being asked to state what the arrangement was, he answered: "Mr. Rankin told me if I would go up and help Mr. Mahon out he would give me ten thousand dollars." On defendant's motion, and with plaintiff's consent, the latter part of the answer referring to the compensation was stricken out, and the jury instructed to disregard it. Ireland had also testified that Rankin told him in the same conversation, in a general way, that he (Rankin) was to pay Mahon $1 per acre for his work, but that he did not go into details. Rankin's attention, when testifying in chief in his own behalf, was called to Ireland's statement as to what was said about Mahon's compensation, and was asked by his counsel to state the facts in relation thereto. He answered: "Well, that was the general conversation; that when the land was turned, Mr. Mahon was to have a dollar an acre. We never went into the details as to the contract between me and Mahon." He was asked on cross-examination to state how much he was to pay Ireland for his work. This was objected to as immaterial, and, being overruled, defendant stated that he was to pay Ireland $10,000, and prejudicial error is assigned thereon. Plaintiff testified that Rankin, in response to his request for men to pass on this land, sent Ireland; and there was offered and received in evidence, over defendant's objection, a letter, dated November 16, 1906, written by defendant, and addressed to plaintiff, introducing C. E. Ireland, who delivered the same to plaintiff on the following day. So far as material, it contains this statement: "Now, he will take up any line to assist you in any way that he can, either go and negotiate with

parties, go and see them, or go in and take a bird's eye
view of some of the timber.   He is perfectly reliable and
trustworthy, and does not talk in the least.  * *  You can
consult with Mr. Ireland, and he can act, wherever you
direct, in such a way that it will not conflict.   In cases
where it will be necessary for you to be in two places at
once, he can fill one for you."   These several objections
will be considered together.

The main issue between the parties to this action
involves the nature and terms of an oral contract made
by them, and on which plaintiff seeks to recover.   Plain-
tiff and defendant were the only persons present when
this contract was made.   If the promise was that plain-
tiff should have $1 an acre when the options were
secured and deeds deposited in the bank, then plaintiff
was entitled to recover, provided he performed and kept
the other terms of the contract.   But if the agreement
was that plaintiff was not to be paid $1 on account of
the options secured and deeds thus deposited, unless the
options were taken by the defendant, then plaintiff was
not entitled to recover, except to the extent sales were
consummated by delivery of the deeds to defendant.
Defendant's counsel urged that, as the testimony of plain-
tiff and defendant, respectively, was directly in conflict
upon this main question, a slight apparent corroboration
of plaintiff was sufficient to turn the scale against the
defendant; that the only corroboration was the testimony
of Ireland as to the arrangement made with him by
defendant in connection with the same transaction, by
which it is claimed defendant agreed to pay Ireland,
unconditionally, the sum of $10,000, for his services; that
while the court, upon objection of counsel, struck out so
much of the answer of the witness, Ireland, as disclosed
the amount of his compensation, there was left before
the jury so much of Ireland's testimony on that subject
as detailed the fact that he was employed by the defend-
ant to secure these options, and that he was paid, or to

be paid, therefor. It is claimed that it was error to allow any portion of such testimony to be considered by the jury, and that such error was emphasized when the court required defendant, upon his cross-examination, to testify, not only that he had made such an arrangement with Ireland, but that he had agreed to pay him $10,000 for his services. 'On the other hand, it is claimed by the plaintiff that the fact and extent of Ireland's agency for defendant in securing these options were material to the issue, because he was to, and did, perform work for defendant under the direction of the plaintiff. We are of the opinion that this latter contention is correct. The evidence shows that, by plaintiff's direction, Ireland personally carried to defendant the offer, and proposed terms of the pending negotiations with T. G. Hendricks respecting the purchase of twenty-two quarter sections, at $20 per acre, with 5 per cent off as commission, and returned with a check drawn by the defendant, for the sum of $8,000, payable to himself, to consummate that deal.

4. It will be remembered that the issue raised by the third separate defense, and the reply thereto, was whether plaintiff was to receive this commission in violation of his fiduciary relation to the defendant, as the answer alleged, or whether the latter was to, and did, receive the benefit of such reduction, and that he had knowledge thereof, and authorized the purchase to be made upon the terms stated, as alleged in the reply. The solution of this issue depended entirely upon the testimony of Ireland as to what knowledge of that matter he possessed, and what he imparted to his principal, and for that reason evidence of his employment and the extent of his authority was admissible. But as to what compensation Ireland was to receive, that was wholly immaterial and irrelevant to any issue in this case, and this is practically conceded by plaintiff's counsel. Nor would plaintiff be entitled to such evidence because it formed a part

of a general conversation, as contended for by him.    The
statute provides that

"When part of an act, declaration, conversation, or
writing is given in evidence by one party, the whole, on
the same subject, may be inquired into by the other":
Section 702, B. & C Comp.

The plaintiff is the party who offered the statement
made by defendant to Ireland as to what the former was
to pay plaintiff, and such offer conferred upon defendant
the right to state all that was said at the time on the same
subject that would, in any way, qualify or explain the
admissions.    In doing so he did not testify as to the terms
of Ireland's employment, but qualified the purported
admission by admitting that he said "that, when the land
was turned, Mr. Mahon was to have a dollar an acre."
Defendant was not in the position of an actor offering a
part of a conversation against the interest of plaintiff,
but of explaining what had been introduced against him-
self by plaintiff, and the latter's rights are confined to
the ordinary rules governing cross-examination of a wit-
ness.

5. Moreover, it was held in *Rollins* v. *Duffy,* 18 Ill. App.
398, that proof of the conversation must be confined to
matters material to the issue, and tending to explain or
qualify what has been said by the other party and proved
as admissions, and that when parts of a conversation are
material, and other parts are not only immaterial,
but have a direct and manifest tendency to prej-
udice the other party in the minds of the jury, it is
the duty of the court to admit only those portions which
are material.    A different rule has been declared in some
cases, in which it is held that everything said in the con-
versation, whether material to the issue, or tending to
explain the admission proved on the other side or not, is
admissible.    It is believed, however, that the better rule
is that the balance of the conversation to be competent
must be material, and in some way affect that portion of

the conversation already proved: *Wilhelm* v. *Cornell,* 3 Grant, Cas. (Pa.) 178. That appears to be the intent of our statute in limiting the right to the balance of the conversation to that which is "on the same subject."

6. It is contended, however, that, as Ireland's agreed compensation was also conditional, no injury could result to the defendant from the admission of such testimony. Defendant's answer to the question addressed to him by plaintiff's counsel was: "I told him if the deal was carried through on the basis it had been arranged, I would give him $10,000"—and immediately he was asked, "That was contingent also?" to which he replied, "Yes, sir." While we are satisfied that whether defendant agreed to pay Ireland this sum conditionally or unconditionally, it would not be relevant or material to the issue; but, defendant having also stated that his agreement to pay Ireland was conditional upon the deal being carried through on the basis it had been arranged, it is manifest that it could not prejudice defendant, for if any inferences applicable to the issue can be drawn therefrom, it tends more to support defendant's contention than that of plaintiff's, and its tendency could not in any event be to excite prejudice against defendant in the minds of the jury.

7. The court gave this instruction:

"If plaintiff exceeded his authority, both as to the initial payment of $50 per 160 acres and $14 per acre purchase price, or if he exceeded his authority in either of such particulars, and if you further find that defendant gained a knowledge of all the material facts in connection with the acts of plaintiff in so exceeding his authority, and the defendant adopted such acts of plaintiff, and accepted the benefits resulting from such acts of plaintiff, then such conduct upon the part of defendant would be ratification of the unauthorized acts of plaintiff, and such ratification would bind defendant to the same extent as though plaintiff acted within the terms of his authority, and in case of such ratification, defendant would not be entitled to any allowance or verdict for such sums as were paid out in excess of authority and afterwards ratified."

8. It is first objected that the court, by this instruction, submitted a question of law to the jury, viz., as to whether plaintiff had exceeded his authority in both, or either, of the particulars mentioned. Where there is a dispute as to the authority of an agent, it is for the jury to find the facts, but it is the duty of the court to declare to the jury whether a given act comes within, or is in excess of, the agent's authority: *Long Creek Bldg. Ass'n* v. *State Ins. Co.* 29 Or. 569 (46 Pac. 366); *Anderson* v. *Adams,* 43 Or. 621, 633 (74 Pac. 215).

9. The instruction assumes as a fact that plaintiff's authority was limited to the initial payment of $50 for each 160 acres, and of $14 per acre purchase price. This, however, is in conformity with defendant's contention and is therefore in his favor, and not prejudicial to him. It also declares, in effect, that any payments made by plaintiff in excess of either limitation would be without authority, and this was within the province of the court, and it was left to the jury to find the number and extent of payments, if any, in excess thereof, which was a question of fact. In that respect the instruction is not open to criticism.

10. It is also objected that what were "the material facts in connection with the acts of the plaintiff in so exceeding his authority" is a question of law; and, as it is claimed that no definition thereof was given, it was error to submit such question to the jury. We think the instructions, taken as a whole, clearly informed the jury what were "the material facts" in that respect; but, if they do not, the instruction states a sound principle of law, and, if the defendant desired a more particular definition as to what constituted material facts, it was incumbent upon him to call the court's attention to the particular grounds upon which the objection was based, so that the trial court might have an opportunity to make a correction, if necessary, but the exception was general, and not specific: *Kearney* v. *Snodgrass,* 12 Or.

311 (7 Pac. 309) ; *Aupperle* v. *Anderson,* 51 Or. 556 (95 Pac. 330). These observations will also apply to the criticism made by the defendant's counsel to the last part of the instruction as to what acts amounted to a ratification.

11. Error is also predicated upon the ground that the court instructed the jury upon the subject of ratification, when it is claimed the same had not been pleaded and was not within the issues, and that the plaintiff must recover upon the case made by his complaint, or not at all, under the rule related in *Neimitz* v. *Conrad,* 22 Or. 164 (29 Pac. 548). If it is incumbent upon plaintiff to plead ratification in order to avail himself thereof, which seems to be contrary to the prevailing rule (16 Pl. & Pr. 904), we think it is sufficiently alleged, not only in the complaint, but in the reply. In the former it is alleged "that from time to time during the performance of the said contract by the plaintiff, and as the said contracts were procured from the said owners, the plaintiff notified the defendant of the said purchases, of the price to be paid for the said lands, of the times of payment, and of the delivery of the said deeds, all in ample time, before the expiration of the times of payment provided in the said contracts. And that from time to time, the defendant, being informed and well knowing of the said purchases and the terms as aforesaid, ratified and approved the same." And in the reply, referring to the charge of paying more than $14 per acre, it is alleged "that the said payments so made as described in the answer were made with the authority and knowledge of the defendant, and were duly ratified by the defendant, he, the said defendant, then and there well knowing that the said payments to the persons set forth in said answer had been made in the sums therein respectively stated."

12. A similar averment is also made in reply to the charge of having advanced more than $50 per each 160 acres contracted for. An express averment that plain-

tiff, with full knowledge of the facts, ratified the act is sufficient, without stating how it was ratified: *Harding v. Parshall*, 56 Ill. 219.

Many other technical objections are made to the instructions, but it is sufficient to say that we have carefully examined each of them, and find no merit therein.

It follows that the judgment is affirmed. AFFIRMED.

Decided July 27, 1909.

ON PETITION FOR REHEARING.

[103 Pac. 53.]

MR. JUSTICE SLATER delivered the opinion of the court.

13. In a motion for a rehearing defendant has called our attention to the fact that in passing upon the first assignment of error we erroneously stated that plaintiff's evidence, to which objection was made, was given in rebuttal, whereas it was upon his redirect examination. The series of letters and telegrams referred to in the opinion were offered in evidence by the defendant during plaintiff's cross-examination. The correction as to the facts will not require a different application of the principles of the law of evidence discussed. It is now contended that the defendant, upon plaintiff's cross-examination, offered in evidence the letters and telegrams of the plaintiff for the purpose of showing that the terms of the contract were as alleged by the defendant, whereas we have said they were introduced, "not to prove the terms of the contract alleged by him in his answer, but as containing declarations made by the plaintiff against his interest," etc., and upon the correctness of this, counsel for defendant have taken issue, and if they are correct, a different application of the rules of evidence must follow. In proof of their contention our attention is directed to the statement of defendant's senior counsel, made when he was asked for what purpose he was offering this testimony, to wit, "I am offering all the correspondence for the purpose of showing that Mahon knew that Ran-

kin had to turn the lands, and that he wasn't to get his money until the lands were turned," and, "It is also inconsistent with his present testimony." We think this does not tend to establish the contention made. It is alleged, both in the complaint and in the answer, that the contract upon which the action is based was made about November 1, 1906, and it is admitted by both parties in their briefs that the terms thereof were not reduced to writing, but rested in parol. How, then, could it be said that letters and telegrams passing between the parties some two and one half months thereafter contained the terms of the contract; that is, constituted the respective parts of the contract? There may have been, and probably was, some reference therein as to what the plaintiff understood was a part of the terms of the contract, and they may have tended to show that "Mahon knew that Rankin had to turn the lands, and that he wasn't to get his money until the lands were turned," but that would not constitute the primary evidence of the contract, which rested in parol. In other words, they are not the offer and acceptance of the respective parties, but admissions of what has been previously concluded between them. We have re-examined the question passed upon as to the admissibility of plaintiff's testimony from the standpoint of the authorities cited in the motion, but we can see no reason for departing from what we have already held. The case of *Nutter* v. *O'Donnell*, 6 Colo. 253, is cited. It is there held that an admission made at one time cannot be rebutted by a declaration at another. *Harding* v. *Clark*, 15 Ill. 30, is to the effect that self-serving declarations made by a defendant after the service of a writ of attachment will not be received to controvert declarations against interest made before, and *Blight* v. *Ashley,* Fed. Cas. No. 1,541, is to the same effect. But that is not the character of the testimony offered here. It is substantive in character, tending to show a different arrangement between

the parties to which the letters and telegrams are claimed to have reference.

It is claimed that we failed to consider and pass upon questions of law raised by defendant's exceptions to the instructions referring to the third separate defense, and set forth in the thirteenth assignment of error in the reply brief. The principles of law involved in the second, third, and fourth objections to the instruction are the same that were made to other instructions, and were considered and passed upon adversely to defendant's contention. The correctness of the ruling has not been assailed, and we are satisfied that the instruction states the law correctly. The first objection is that the instruction gives undue weight and prominence to the evidence and theory of respondent. The instruction is intended to present plaintiff's theory of the case as to ratification by defendant of the alleged agreements by plaintiff to receive compensation from Hendricks, Snodgrass, and other landowners in violation of his duty to defendant. The substance of it is that, if the jury finds that plaintiff made such agreement, but afterwards with full knowledge of all the material facts, defendant accepted the benefits, he ratified the same, and it would not avail him as a defense. We find, however, that later on the court gave the substance of the same instruction from the defendant's theory of the case, without the element of ratification, and to the effect that if they found defendant's allegations as to plaintiff receiving compensation from both parties to be true, then plaintiff could not recover. The instructions fairly presented the theory of each party, and we think that there is no just ground for the objection. It is also urged in the motion that there is no evidence showing such ratification. It is sufficient to say that we have carefully re-examined the portions of the evidence to which our attention has been directed, and we are satisfied that there was evidence upon which to base the instruction, and it was proper to give it.

Motion denied.          AFFIRMED: REHEARING DENIED.