Argued February 8, reversed March 13, costs taxed March 20, 1928.

## LENA SCHLUTER ET AL. *v.* NIAGARA FIRE INS. CO. ET AL.

(264 Pac. 859.)

**Reformation of Instruments—Evidence Should be Clear and Convincing to Sustain Reformation of Instrument on Account of Fraud or Mistake.**

1. In all cases for reformation of an instrument on account of mistake or fraud, evidence should be clear and convincing in order to support recovery.

**Witnesses—Letter Introduced Merely to Contradict Witness' Statement is not Substantive Evidence.**

2. Letter introduced merely to contradict statement of witness upon witness-stand is not treated as substantive evidence.

**Reformation of Instruments—Vendor and Mortgagee Held not Entitled to Reformation of Fire Policy, Taken Out by Purchaser Without Agreement to Include Plaintiffs.**

3. Where vendor and mortgagee permitted policy to lapse pending negotiations to clear title and purchaser took out insurance

---

1. Sufficiency of evidence to warrant reformation of instrument on ground of mutual mistake, see note in 19 Ann. Cas. 343. See, also, 23 R. C. L. 367.

in his own name, protecting state as one of mortgagees, without any agreement to cover interest of vendor or other mortgagee, such parties were not entitled to have policy reformed so as to include them after building on premises had burned subsequent to expiration of original policy.

**Evidence—Insurance Company Held not Bound by Declarations of Agent and Adjuster After Fire That Mortgage, not Protected by Policy, Would be Paid.**

4. Insurance company *held* not bound after fire by declarations of its agent and adjuster to the effect that vendor and mortgagee of premises were all right and that mortgage, not protected by policy, would be paid.

Fire Insurance, 26 C. J., p. 105, n. 53, 54.
Reformation of Instruments, 34 Cyc., p. 984, n. 34.
Witnesses, 40 Cyc., p. 2764, n. 16.

From Wasco: FRED W. WILSON, Judge.

Department 1.

REVERSED.  COSTS TAXED.

For appellants there was a brief over the name of *Messrs. Veazie & Veazie,* with an oral argument by *Mr. J. C. Veazie.*

For cross-appellants there was a brief and oral argument by *Mr. Francis V. Galloway.*

For respondent there was a brief and oral arguments by *Mr. John Gavin* and *Mr. Otis W. Ramsower.*

McBRIDE, J.—This is a suit to reform a policy, issued in favor of Otis W. Ramsower, with a rider in favor of the State of Oregon as its interest may appear. On June 15, 1922, Lena Schluter was the owner of real property described in the complaint. On the land is situated a house, the insurance of which is involved in these proceedings. At that time there was a mortgage on the property for the sum of $1,700 given to Thomas Brogan, and which was duly

124 Or.—36

recorded. On the last-named date, Ramsower, who was an ex-service man of the State of Oregon and entitled to the benefits of the Oregon Soldier's Loan, entered into a contract with Lena Schluter and her husband, Casper Schluter, for the purchase of this real property. The contract provided, in substance, that he agreed to purchase the property for the entire consideration of $3,500 and to use his soldier's loan from the State of Oregon to pay therefor in part, and the balance of the purchase price would be arranged between himself and Brogan by Brogan taking his note and mortgage second to the first mortgage to the state, so as to permit the soldier's loan to go through and the state to get its first mortgage.

The contract also recites that Ramsower should have possession of the premises not later than July 15, 1922, and that when he should have taken possession the remaining part of the purchase price, to be paid to Lena Schluter over and above the Brogan mortgage, shall begin drawing interest at the rate of 8 per cent per annum. Ramsower took possession July 15, 1922, and lived there until April 13, 1923, when the house was burned.

The proceedings by which a soldier's loan is obtained may be briefly stated as follows: First, the initial application setting forth in detail the terms of the contract with the vendor; second, instructions to the local appraisers to view the property and make the appraisement thereof and return their report to the commission; and third, the approval of the amount of the loan which will be allowed. If the commission and the applicant agree on the amount that will be allowed, then the following proceedings are had: First, an approval of the title and a satisfactory report thereon by the attorney for the commission,

second, the preparation of all the papers for execution and placing them in the hands of the escrow agent, the Citizens' National Bank, of The Dalles, being such agent in this instance; third, the execution of the papers by the applicant, recording of instruments and final report of attorney; and fourth, the disbursement of the money through the escrow agent, which usually takes place ten days or two weeks after the receipt by the commission of the final report of the attorney showing mortgages and deeds of record and in the abstract.

It may be said here that at the time this contract was made the property was insured in another company for the sum of $1,500 to cover the Brogan mortgage, and that insurance did not expire until November 8, 1922. The contract was prepared by Francis V. Galloway, Esq., who was the mutual attorney of both parties for that purpose, and who also conducted the proceedings for obtaining the soldier's loan for the defendant Ramsower as attorney for the loan commission. The testimony does not indicate how rapidly Ramsower pressed the loan proceedings, but it would appear that they proceeded with reasonable diligence until September 21, 1922, when Galloway received from the commission his blank for the preliminary report on the title. In other words, during the three months from the contract of June 15, 1922, to September 21, 1922, Ramsower had made his initial application and the appraisers had made their report to the commission. Thereafter, on or about October 20, 1922, Galloway received the abstract of title for examination. On November 14, 1922, Galloway made his favorable report upon the title to the land, as described in the contract and deed for the escrow, and the commission on November 17, 1922,

forwarded all of the necessary papers to the Citizens' National Bank at The Dalles for execution.

Had it not been for a mistake in the boundary line as described in the deed, and which will be hereinafter alluded to, the proceedings would probably have been promptly closed after November 17, 1922, and the money could in all probability have been disbursed by the commission within twenty or thirty days thereafter, allowing a reasonable time for the clerk to record the instruments and get them back into the hands of the local attorney, and the abstract to be continued showing the record of deeds and mortgages. But it developed that the description in the deed to Schluter and wife, which was the source of their trouble, did not correctly describe the land intended to be conveyed to them and an examination conducted by Ramsower on the ground showed that the land of an adjoining owner, if the deed should be taken to be correct, actually ran under the house that was upon the land leaving a large part of it on land which the paper title purported to give to Mrs. Fleck, the adjoining owner. Unsuccessful attempts were made to induce Mrs. Fleck to convey the land according to the true intent of the deed between her and Schluter and wife; but she declined to do this and a suit to quiet title was necessary in order to make the title conform to the actual intent of the parties. Owing to the fact that one of the proposed defendants in that suit was a minor, it was thought better to wait a short time until he should become of age rather than go though the process of having a guardian appointed for him, and it was not until February, 1923, that the suit was actually commenced. After the suit had been commenced and some testimony taken, it was suddenly terminated by an agreement of the parties by which a decree was rendered on

April 13, 1923, decreeing to Mrs. Schluter the property embraced in the contract from Schluter and wife to Ramsower. In the meantime, there had been a divorce between Schluter and wife, and he had conveyed the whole property to her by a quitclaim deed. Immediately after the decree, in a suit to quiet title, the attorney for the commission took steps to reinstate Ramsower's application for the loan and had the papers and proceedings changed to comply with the new and correct description of the property. On the evening of April 13, 1923, the house was totally destroyed by fire and Ramsower abandoned his contract and gave up his rights thereunder. As before stated, the house on this land had always been insured. The policy hereinbefore alluded to was in the Pacific States Company and was in evidence in this case, and contained a rider making the loss payable to Thomas Brogan, mortgagee, as his interest might appear.

It appears from the testimony that on August 11, 1922, defendant Ramsower took out a policy in the Cleveland National Fire Insurance Company for $4,000, being $3,000 on the house and $1,000 on his personal property. This is the policy sought to be reformed and enforced in this proceeding. This policy had attached thereto a rider with loss payable to the State of Oregon, mortgagee, as its interest might appear. Ramsower paid the premium of $60 for this policy and it was written to cover the house in the sum of $3,000 from the eleventh day of August, 1922, to the eleventh day of August, 1925. It was written by W. F. Gitchell, as local agent for the Cleveland National Fire Insurance Company and who is also the real estate agent who brought Mrs. Schluter and Ramsower together. The policy was delivered to Ramsower who kept possession thereof

until the house was destroyed by fire as before related.

Subsequent to the issuance of the policy to Ramsower, and before the fire, the Cleveland National Fire Insurance Company went out of business in Oregon, re-insuring itself as to outstanding policies in the Niagara Fire Insurance Company, which on that account was also made a defendant in this action. The claim of the plaintiff in this action is that before this policy was issued, they directed Gitchell, the agent of the Cleveland National Fire Insurance Company, to see that they were protected by the policy and that he agreed so to do, but such testimony is not all clear and especially as to the date when they gave these alleged instructions. It is clear, however, from the testimony of Ramsower that there was no agreement on his part to take out insurance to cover the interest of Brogan and Mrs. Schluter in the property, but that the policy actually taken out was just the one he bargained and paid for; that he had no intention of including Brogan and Mrs. Schluter therein and that there was no contract to that effect between himself and Gitchell, the agent for the company.

1–3. It is rather an unusual proceeding for a court to attempt to reform a policy, which the policy-holder has taken out and paid for by requiring it to include parties which he never intended to include and who were in nowise named in the policy, or on any rider to the policy, and where no contractual relation is shown between the parties, who seek to have themselves included, and the holder of the policy. It would seem to be, in effect, introducing new parties into the contract whom the original policy-holder never intended to include therein, and so far as shown by the weight of testimony, the agent of the company never intended to include therein. It would be in

effect making a new contract and a new policy.    Outside of rather vague assertions by Mrs. Schluter, and the rather indistinct statement of Mr. Brogan, there is no testimony which the court was entitled to consider tending to indicate any promise on the part of the agent to include these parties in a contract which was to result in a policy to be paid for and issued to Ramsower.   In cases of this kind, and in all cases for the reformation of an instrument, on account of mistake or fraud, the evidence should be clear and convincing, and, while there is some evidence, tending to support plaintiff's theory, it is neither clear nor convincing.   In fact, there is nothing in the testimony that tends particularly to support plaintiff's contentions outside of their own indistinct statement except a letter written by Gitchell to the insurance company urging them to pay the claim and stating that he had sold this insurance honestly and that Mrs. Schluter and Brogan were entitled to the money. Gitchell was a witness for the plaintiff and practically contradicted these statements which he had made in a letter which was written after the fire had happened and after he ceased to be agent for the insurance company; and which was only introduced to contradict his statement upon the witness-stand, and which is not substantive evidence for the plaintiff in this case.    The most that can be said is that it indicated that he had been carrying water on both shoulders and was at best a self-sufficient and an ignorant fellow, who, having neglected to properly advise the plaintiffs, sought to better their condition by writing a letter which he thought might induce the company to settle with them upon some sort of terms.    Other than this, it is of no value in the case.    It seems rather probable that these parties plaintiff, when they entered into the contract of June 15th, expected

the proceedings to terminate within a very short time, probably by the time the original insurance on the house expired, and that they allowed their insurance to lapse on account of the various delays heretofore alluded to.

4. Some evidence was introduced as to declarations made by Gitchell after the fire to the effect that plaintiffs were all right and that under the policy the mortgage would be paid; but these declarations could not bind the company although he may have been ignorant enough to have himself believed that such would be the case. The same thing may be said of evidence of declarations by the adjuster to like effect. He had no power to make such declarations or do anything but to adjust the losses according to the terms of the policy. While it was unfortunate that these people were not properly insured and protected, we cannot see our way clear, under the testimony, to reform the policy so as to make them parties to a contract of insurance when it is evident that neither the person who bought the insurance nor the company who sold it intended such a result.

This is but a brief statement of our conclusions, as an analysis of the testimony in detail, which has been examined with more than usual care, would consume unnecessary space in this opinion.

The decree, so far as it grants relief to the plaintiffs, is reversed.    REVERSED.    COSTS TAXED.

RAND, C. J., and BEAN and ROSSMAN, JJ., concur.