Argued February 20, reversed May 28, rehearing denied July 30, 1929.

# CLARENCE ROEMHILD *v.* HOME INSURANCE COMPANY ET AL.

(278 Pac. 87.)

For appellant, Home Insurance Company, there was a brief over the name of *Messrs. Veazie & Veazie,* with an oral argument by *Mr. J. C. Veazie.*

For appellant, Pendleton Auto Company, there was a brief over the name of *Messrs. Fee & Fee,* with an oral argument by *Mr. James A. Fee.*

For respondent there was a brief over the names of *Messrs. Reynolds, Flegel & Smith* and *Messrs. Poe, Falconer & Emory,* with an oral argument by *Mr. Austin F. Flegel.*

RAND, J.— ■ The obligation of the Home Insurance Company must be measured by the terms of the policy alone and this obligation is expressly stated in the policy in these words:

" * * loss, if any, to be adjusted with purchaser, though to be paid, subject to all conditions of this policy, only to Commercial Credit Company, Baltimore, Md., for the account of all interests."

This was the only obligation which the insured, in case of loss, could require the company to perform. Rieden and wife were the purchasers and were so named in the policy and, since their rights in the car had been preserved up to the time of the adjustment, they were the persons with whom the company was

bound to adjust the loss and the only persons with whom the adjustment could be made. The amount of the loss could be determined in one of two ways only. One by a determination of the parties themselves, the other in case of suit by proof. In the case at bar the adjustment was made by a determination of the parties and without suit and, after the adjustment had been made, the amount agreed upon was paid over as required by the terms of the policy to the Commercial Credit Company and was by it distributed to those entitled to receive it. The adjustment was made by Rieden, acting for himself and wife, and by the company, acting through its adjuster.

■ ■ In order to obtain an adjustment of the loss, the company selected and employed H. A. Hegeman, an independent adjuster, and authorized him to adjust the loss. An adjuster is a person who is selected because of his special skill and fitness and, as in all cases of delegated authority where personal trust or confidence is reposed in the agent, and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal and cannot be delegated to another unless there be a special power of substitution: *Lyon* v. *Jerome,* 26 Wend. (N. Y.) 485 (37 Am. Dec. 271).

"The agent of the company authorized to adjust a loss and selected for such purpose by reason of his special skill and fitness has no implied power to delegate his authority." 33 C. J., p. 37.

"An adjusting agent has no power to delegate his authority. His position is one of personal trust and confidence reposed in him by his principal and he cannot transfer his relation to a third party." *Albers* v. *Phoenix Ins. Co.,* 68 Mo. App. 543.

As said by this court, speaking through Mr. Justice McBRIDE, in *Schlüter* v. *Niagara Fire Ins. Co.,* 124 Or. 560 (264 Pac. 859):

" * * The same thing may be said of evidence of declarations by the adjuster to like effect. He had no power to make such declarations or do anything but to adjust the losses according to the terms of the policy."

In 1 C. J., at page 1237, an adjuster is defined as

"One whose business it is to ascertain the loss and agree with the assured on the settlement; one who determines the amount of a claim, as a claim against an insurance company; the person who makes the adjustment or settlement."

In *Weed* v. *London & L. Fire Ins. Co.,* 116 N. Y. 106 (22 N. E. 229), the question was whether an adjuster had the power to waive a defense based upon failure of the assured to comply with certain conditions of the policy. In this case the court said:

"Rice (the adjuster) was not an officer or general agent of the company. He was a resident of Albany engaged in an independent business as an insurance adjuster, giving his services to any person who wished to employ him.

"There is no evidence in the case to show that he had any power whatever, except to ascertain and adjust the loss sustained by the assured, and the plaintiff is chargeable with knowledge of his powers and the extent of his authority."

And again the court said:

"His business was to ascertain the loss and fix and adjust the amount. Beyond that he had no duty to perform and no power to act."

In *Bond* v. *National Fire Ins. Co.,* 77 W. Va. 736 (88 S. E. 389), it is said:

"There is conflict of testimony as to whether Hork-heimer promised to pay, but none as to his authority to make the promise. \* \* The word 'adjuster' as applied to insurance companies, has a well under-stood meaning.

" 'Adjuster—one who determines the amount of a claim.' 1 Cyc. 795.

" 'Adjusters, appraisers, medical examiners, and attorneys are strictly special agents, whose authority to bind the company is narrowly confined to acts inci-dent to the discharge of the special functions for which they are employed.' Vance on Insurance, 316.

" 'An adjuster is one who determines the amount of a claim, as a claim against an insurance company.' 1 Words & Phrases, 195.

"The following are well settled rules respecting the appointment, duties, and authority of adjusters for insurance companies: \* \*

"Second. An insurance adjuster is ordinarily a special agent of limited authority to ascertain and ad-just the loss, having no power merely as such in the absence of some evidence as to his authority to alter the contract, or waive any of its essential conditions."

In *Chisholm* v. *Royal Ins. Co.*, a Massachusetts case reported in 225 Mass. 428 (114 N. E. 715), it was held that an adjuster had no power to bind the company beyond the obligations of the policy, the court say-ing:

"Church (the adjuster) had authority only to as-certain and adjust the loss sustained by the theft of the automobile; and there is nothing in the record to show that the company ratified his alleged agreement to give the plaintiff a practically new car, or that it waived the provision of the policy limiting its liabil-ity to the actual cost of repairing, or, if necessary, replacing the parts damaged or destroyed by the theft."

In *Baker* v. *Seaweard,* 63 Or. 350, it is said on page 354 (127 Pac. 961, 962):

"We will first ascertain the law as to the agency, and who must determine the issues thereunder. It may be stated generally that a principal is not bound by the acts of his agent, unless within the real or apparent scope of the authority of such agent; and one dealing with an agent is bound, at his peril, to ascertain the extent of the agent's authority, and is chargeable with knowledge thereof. *Reid* v. *Alaska Packing Co.,* 47 Or. 215 (83 Pac. 139). And where a party relies upon a contract made with a person claiming to be an agent of another, he must prove, where the agency is disputed, that he was expressly empowered to make the contract, and that its terms were within the scope of his authority. *Rumble* v. *Cummings,* 52 Or. 203 (95 Pac. 1111)."

And again on page 355 of 63 Or. (127 Pac. 962):

"The principal is often bound by the acts of his agent in excess of his authority; but two important facts must be clearly established to create such a liability: (1) The principal must have held the agent out to the public in other instances as possessing sufficient authority to embrace the particular act in question, or knowingly have acquiesced in the agent's assertion of the requisite authority; and (2) the party dealing with such agent must have had reason to believe, and must have believed, that the agent possessed the necessary authority. Justice MOORE, in the case of *Connell* v. *McLoughlin,* 28 Or. 232 (42 Pac. 218), says these two facts must always be established to render the principal liable for the act of his agent in excess or abuse of his authority; for any person dealing with an agent does so at his peril."

In dealing with Hegeman, the Pendleton Auto Company knew the nature and character of Hegeman's employment and of the limitations and restrictions upon the power of an adjuster. The parties dealing

with him knew that he was not a general agent of the company and knew or should have known that he had no power to bind his company by a contract either to repair the car or send it to Portland for repairs. They were bound to know that an adjuster had no power to incur any obligation upon the part of his principal which was not imposed upon the principal by the terms of the policy itself. There was no evidence in this case showing any liability of the Home Insurance Company for the alleged negligence of Sager except through the alleged contracts of Hegeman, and these contracts, if made, were not binding upon the company because they were neither authorized nor within the scope of his authority. It was, therefore, error for the court to refuse to direct the jury to return a verdict for the Home Insurance Company.

The Pendleton Auto Company assigns error upon numerous grounds. It contends that it was acting as a mere intermediary of the Home Insurance Company, which contention we have shown to be untenable. It contends that Sager, in driving the car to Portland, was an independent contractor for whose acts it is not liable and that there was no evidence to support the verdict.

"One who contracts to do a specific piece of work, furnishing his own assistants and executing the work either entirely in accordance with his own ideas or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is clearly a contractor, and not a servant." *Hale* v. *Johnson*, 80 Ill. 185; *Linquist* v. *Hodges*, 248 Ill. 491 (94 N. E. 94).

■ ■ We think there was evidence to go to the jury upon the question of the Pendleton Auto Company's

liability to plaintiff because of Sager's negligence. Whether Sager at the time of the accident was a servant of the Pendleton Auto Company or was in the position of an independent contractor for whose acts the Pendleton Auto Company would not be liable are questions of fact for the jury. For this reason, it was not error for the court to refuse to grant the motion of the Pendleton Auto Company for a nonsuit or refuse to direct a verdict in its favor. In effect, the trial court instructed the jury that it could find that the Pendleton Auto Company and the Home Insurance Company were engaged in a joint enterprise while the car was being driven by Sager to Portland. There was no evidence to show that these two corporations were engaged in a joint enterprise at said time and it was error for the court to instruct the jury to that effect. This was prejudicial to the Pendleton Auto Company and probably affected the amount of the verdict. If they had not been so joined, it is possible that the jury would have refused to return a verdict against the Pendleton Auto Company for any amount.

Because of this error, the judgment must be reversed as to the Pendleton Auto Company and the cause will be remanded to the court below with directions to dismiss the action as to the Home Insurance Company and for such other proceedings as are not inconsistent herewith.

REVERSED. REHEARING DENIED.

COSHOW, C. J., and McBRIDE and ROSSMAN, JJ., concur.