Argued July 10, reversed and remanded November 21, petition
for rehearing denied December 11, 1974

## STATE OF OREGON, *Respondent, v* TONY ESTES DERRYBERRY, *Petitioner.*

528 P2d 1034

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief were Gary D. Babcock, Public Defender, and John K. Hoover, Deputy Public Defender, Salem.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jim G. Russell, Assistant Attorney General, Salem.

TONGUE, J.

Defendant was convicted of first degree theft under ORS 164.055. In his appeal to the Court of Appeals defendant contended that the trial court erred in instructing the jury that it could consider a prior inconsistent statement by a state's witness not only for the purpose of impeaching the credibility of that witness, but also as substantive evidence to establish the truth of the facts stated, as provided by Rule 63 (1) of the proposed Uniform Rules of Evidence.

The Court of Appeals affirmed the conviction, holding that such an instruction was proper and that it was consistent with and supported by the reasoning of recent decisions of this court. 17 Or App 262, 521 P2d 1065 (1974). SCHWAB, C. J., dissented. We granted defendant's petition for review because of the importance of the question whether the instruction by the trial court and the decision by the Court of Appeals are consistent with the decisions of this court and, if not, whether this court should adopt Rule 63(1) of the proposed Uniform Rules of Evidence.

The facts of this case are of importance because they provide an excellent illustration of the impact of that proposed rule, particularly in criminal cases.

*Summary of the facts.*

This prosecution is based on the following series of events. On January 25, 1973, all of the furnishings

disappeared from the home of Mary Young. On February 8, 1973, the police found and arrested Joel Clark for parole violation at defendant's trailer home. The arresting officers became suspicious that the furniture in defendant's home was stolen and after some investigation returned with a search warrant. A large part of Mary Young's furniture was thus recovered.

The only factual issue at defendant's trial was whether he knew that the furniture found in his possession was stolen. Joel Clark was called by the state and testified that defendant had told him he had obtained the goods by purchase or trade. Two police officers were then called and testified that after they had arrested Clark for parole violation he told them that defendant had told him on January 26 that he had "ripped off" the furniture the previous day.

It becomes obvious upon a reading of the record that the testimony of the police officers that they heard the witness Joel Clark say that he heard the defendant say that he had stolen the furniture was vital to the state's case. It was the only direct evidence upon the only contested issue in the case—whether defendant knew that the furniture was stolen. The only other evidence on that issue was the circumstantial evidence that defendant had made inconsistent statements as to how he acquired the furniture—by purchase or gift.

It is also clear from the record that the state's attorney knew in advance of the trial that Clark would recant his previous statements to the police. In spite of that knowledge the state called Clark as a witness and made an offer of proof outside the presence of the jury of his testimony and that of the police offi-

cers. At that time witness Clark denied making such statements to the officers but they testified that he did so and that he had promised to so testify. In argument over the admissibility of that testimony, the state's attorney stated that he intended to offer the testimony of the officers "for impeachment purposes only."

The trial court then overruled defendant's objections to the offered testimony. While still out of the presence of the jury, and before witness Clark was called to testify before the jury, he was told by the trial judge that the matter would be referred to the grand jury for possible prosecution for perjury, presumably if in his testimony he continued to deny such statements.

Joel Clark was then called by the state as a witness. At the time of his previous conversations with the police officers he was in the county jail, following arrest for parole revocation, and faced a possible eight-year sentence. At the time of his testimony, however, he was a prisoner in the Oregon State Penitentiary and his parole had apparently been revoked.

Clark testified that he did not remember whether he told the police that defendant had said that he stole the furniture. When pressed further, he testified to the contrary, that defendant told him that he bought or traded for the furniture. He also testified that he was told by the police that they would contact his parole board if he did not testify that defendant told him that he had stolen the furniture and that he was also told by the state's attorney that if he did not so testify he would be prosecuted for perjury.

Consistent with the previous position of the state

that the testimony of the officers was offered "for impeachment purposes only," the state's attorney made no request for an instruction that such testimony could be considered as substantive evidence. The defendant, however, requested an instruction that such testimony could be considered for impeachment only, and not in considering the truth or falsity of statements by defendant to Clark.

The trial court then, on its own initiative, instructed the jury that the testimony of the police officers "concerning statements allegedly made by the witness, Joel Clark, regarding statements made by the defendant to him concerning the source of the property" could be considered by the jury not only "for the purpose of determining the truth or falsity of the testimony of witness Clark," but also "for purposes of determining whether or not the defendant himself made such statements to Joel Clark."

■ Defendant took exception to that instruction, as well as to the failure to give the instructions requested by him. The trial court then stated that:

> "* * * [S]ince the Court has not determined whether or not it will adopt Rule 63.1 of the proposed Uniform Evidence Act, * * * I think the rule should be adopted and since the matter is open, I am basing the instructions on that uniform rule."

*The instruction by the trial court was not only contrary to the rule as previously established by decisions of this court, but was inconsistent with much of the previously established law of Oregon relating to hearsay testimony.*

This court has previously held, in accordance with the well-established common law rule, that testimony of prior inconsistent statements by a witness is ad-

missible solely for purposes of impeachment, and not as substantive evidence. As stated in an article by Swearingen, How the Adoption of the Uniform Rules of Evidence Would Affect the Law of Evidence in Oregon: Rules 62-66, 42 Or L Rev 200, 203-04 (1963):

> "* * * Virtually all courts have held to the rule denying prior contradictory statements any substantive value.
>
> "Oregon is in accord with the prevailing authority. [Citing cases] Since those early cases, the Oregon court has often reaffirmed its position that proof of a witness's prior statements is admissible only for the purpose of impeaching the witness, and not as substantive evidence of the truth of the facts previously stated."

It follows that the instruction by the trial court, as approved by the Court of Appeals, was contrary to the previously existing rule in Oregon relating to the use of prior inconsistent statements of a witness.

See *Madron v. Thomson,* 245 Or 513, 516, 419 P2d 611, 423 P2d 496 (1967); *State v. Schwensen,* 237 Or 506, 524, 392 P2d 328 (1964); *State v. Herrera,* 236 Or 1, 9, 386 P2d 448 (1963); *State of Oregon v. Watts,* 208 Or 407, 411, 301 P2d 1035 (1956); *Austin v. Portland Traction Co. et al,* 181 Or 470, 478, 182 P2d 412 (1947); *State v. Opie,* 179 Or 187, 209, 170 P2d 736 (1946); *State v. Newburn,* 178 Or 238, 240, 166 P2d 470 (1946); *In re Lambert's Estate,* 166 Or 529, 538, 114 P2d 125 (1941); *Schluter v. Niagara Fire Ins. Co.,* 124 Or 560, 567, 264 P 859 (1928); *Timmins v. Hale,* 122 Or 24, 36, 256 P 770 (1927); *Anderson v. Aupperle,* 51 Or 556, 563, 95 P 330 (1908); *State v. Jarvis,* 18 Or 360, 366 23 P 251 (1890); *State v. Waites,* 7 Or App 137, 143, 490 P2d 188 (1971); *State v. Christensen,* 3 Or App 442, 447, 474 P2d 782 (1970).

The testimony of the police officers that they heard the witness Clark say that he heard the defendant say that he stole the furniture was "double hearsay." Thus, that testimony was inadmissible as substantive evidence upon the ground that it was hearsay unless it came within some exception to the general rule prohibiting the use of hearsay testimony.

2. Most, if not all, of the exceptions to the hearsay rule, as previously recognized by the decisions of this and other courts, satisfy either one or both of the following requirements: (1) Some special circumstances to vouch for the trustworthiness of the out-of-court statement, so as to justify dispensing with the need for cross-examination *at the time the statement was made* (Examples: dying declarations, spontaneous statements, statements against interest and admissions by a party), and/or (2) Some necessity for the use of the out-of-court statement, usually as a result of the unavailability of the witness (Examples: dying declarations, declarations against interest and former testimony).

Under the rule adopted by the Court of Appeals, neither of these requirements would be satisfied: (1) There were no circumstances to vouch for the trustworthiness of the statement by Joel Clark which the police officers say they heard him make. On the contrary, as a prisoner in jail facing an extended sentence upon the revocation of his parole, his obvious interest was to cooperate with the police in their investigation of the defendant and to say what he thought they would want him to say. (2) There was no necessity for the offer in evidence of these out-of-court statements by Clark because he was available to testify as a witness to what he heard the defendant say.

According to the Court of Appeals, the instructions by the trial court, based upon Rule 63 (1) of the proposed Uniform Rules of Evidence, is supported by an "application of the reasoning" of this court in *Sheedy v. Stall,* 255 Or 594, 468 P2d 529 (1970), and *Timber Access Ind. v. U.S. Plywood,* 263 Or 509, 503 P2d 482 (1972).

In *Sheedy* (255 Or at 596-97), as quoted by the Court of Appeals, we recognized that in determining the correct application of the hearsay rule "an examination of the reasoning behind the rule is probably the best basis for determining whether the evidence is admissible" and that "it is the untrustworthiness of the declarant's statement that causes hearsay to be excluded." The statements in *Sheedy* were not hearsay because they were not offered to prove the truth of the matter asserted (255 Or at 599). As previously stated, this requirement of "some special circumstances to vouch for the trustworthiness" of the prior statement by Joel Clark is not satisfied in this case.

In *Timber Access* (263 Or at 515), as also quoted by the Court of Appeals, this court again recognized that exceptions to the hearsay rule "usually encompass situations in which the out-of-court statements are made under circumstances which guarantee the probable trustworthiness of the statements." Because such circumstances were present in that case, and also because of "necessity" resulting from the subsequent death of the declarant, this court held that the out-of-court statements in that case were admissible as substantive evidence even though they did not fall within any previously recognized exception to the hearsay rule (263 Or at 522-23). Again, however, there were no circumstances which guaranteed the "prob-

able trustworthiness" of the prior statement by Joel Clark. Neither was there any "necessity" for the admission of such statements as substantive evidence because at the time of trial he was both alive and available to testify. See also the dissenting opinion by SCHWAB, C. J., further distinguishing these and other decisions relied upon in the majority opinion by the Court of Appeals.

We are also not oblivious to the contentions made by the dissent, including the statement that "most of those who have given serious thought to the question" would adopt Rule 63(1) of the proposed Uniform Rules of Evidence. The fact remains, however, that the courts of most states have, as yet, declined to adopt such a rule and the merits of its counterpart, Rule 801 (a) of the proposed Federal Rules of Evidence, are still under debate in the Congress of the United States.

Of more importance, however, is the fact that the effect of the adoption of such a rule would not be limited to cases involving evidence of prior inconsistent statements of witnesses. This is so because the reasoning upon which the proposed rule is based is such as to strike at the two basic requirements which, under the present law of hearsay, must be satisfied before exceptions to that rule will be recognized, i.e., (1) the requirements of some special circumstances to vouch for the trustworthiness of the out-of-court statement and (2) some necessity for the use of the out-of-court statement.

As previously pointed out, neither of these requirements is satisfied in this case and both would be eliminated by the proposed rule. If these requirements

need not be satisfied for the purposes of this exception to the hearsay rule, it would follow that they may also be ignored for the purposes of other exceptions to the hearsay rule.

Thus, the adoption of Rule 63 (1) would undermine the foundations underlying much of the present law of hearsay evidence and would result in the overruling, sub silentio, of many of the previous decisions by this court. Indeed, it is the avowed purpose of the proposed Uniform Rules of Evidence to "wipe the slate clean of all disqualifications of witnesses, privileges and limitations upon the admissibility of relevant evidence" in order that "harmony and uniformity [may be] advanced by writing back onto the slate the limitations and exceptions desired." 9A Uniform Laws Annotated, Rules of Evidence 598, Rule 7, Commissioner's Note (1953). See also articles entitled "How the Adoption of the Uniform Rules of Evidence Would Affect the Law of Evidence in Oregon," 41 Or L Rev 275 and 376, and 42 Or L Rev 200 and 251 (1963).

We do not say that all of the present law of hearsay must forever remain engraved in stone. Nevertheless, we are not prepared to adopt Rule 63 (1) at this time, particularly in a criminal case in which the liberty of a defendant is at stake and one in which the evidence of the inconsistent statement was not only hearsay, but was "double hearsay" of a most unreliable kind, and in which the consideration of such evidence by the jury as substantive evidence, under the express instruction of the court to that effect, was probably crucial in the conviction of the defendant.

For these reasons, we hold that defendant's con-

viction must be reversed and that this case must be remanded for a new trial.

Reversed and remanded.

O'CONNELL, C. J., dissenting.

The majority recites that *"The instruction by the trial court was not only contrary to the rule as previously established by decisions of this court, but was inconsistent with much of the previously established law of Oregon relating to hearsay testimony."* That may well be true, but unless this court decides to bind itself by precedent without any further inquiry, this can only be the beginning point for a discussion of the soundness of the position previously taken in our cases. The majority fails to give any satisfactory reasons for perpetuating the rule excluding prior statements of a witness offered to prove the happening of the matters asserted therein.

The majority opinion correctly states the prevailing view. The traditional and majority view in this country has been that any statement not made under oath and not subject to cross-examination is hearsay to the extent that it is introduced to prove the truth of the matter asserted in the statement. The statement is admissible only if it falls within a specific exception to the hearsay rule.[1] Prior inconsistent statements of a witness who is not a party are not within any exception to the hearsay rule and, therefore, under the traditional view such statements are inadmissible to prove the truth of the contents of the statement.[2] It is recognized, however, that such statements are ad-

---

[1] McCormick on Evidence, § 226 (2d ed 1972).
[2] *Id.,* § 39.

missible for the entirely separate purpose of impeaching the witness' credibility.

Increasingly, it has been recognized that this distinction is indefensible. Most who have given serious thought to the question have concluded that there is no basis in the policy considerations underlying the hearsay rule for refusing to admit for substantive purposes prior inconsistent statements of a witness present and available for examination.[3]

McCormick identifies three factors as militating against the use of prior inconsistent statements as substantive evidence. Under orthodox analysis, he reports, such evidence is barred because "its value rests on the credit of the declarant, who was not (1) under oath, (2) subject to cross-examination, or (3) in the presence of the trier, *when the statement was made.*" (Emphasis added.)[4]

McCormick then points out that "[t]he oath is no longer a principal safeguard of * * * trustworthiness"[5] and notes that sworn statements, such as affidavits, are not admissible. In addition, he disputes the need for contemporaneous cross-examination and view of demeanor.[6] As to the need for contemporaneous cross-examination, he notes that the only need is to catch the witness before he can "harden and become unyielding" in his lies, but that this will never be the case when the statement at trial is inconsistent with

---

[3] McCormick, *supra* § 251; V Wigmore on Evidence, § 1362 (3d ed 1940); ULA, Uniform Rules of Evidence 63 (3) (1965).

[4] McCormick, *supra* § 251 at 601.

[5] *Ibid.*

[6] Relied on heavily in State v. Saporen, 205 Minn 358, 362, 285 NW 898, 901 (1939), the leading case supporting the traditional view and cited by petitioner in his brief.

the earlier statement. With respect to the need for observing the demeanor of the witness, he agrees with Judge Learned Hand, that:

"\* \* \* If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding what they see and hear of that person and in court."[7]

In addition, since "memory hinges on recency," the statement closest in time to the events to which it relates is likely to be the most accurate.[8]

The major reason for denying admission to out of court statements is the lack of opportunity from cross-examination.[9] Where, as in the case before us, the out of court declarant is available for cross-examination, this consideration is inapplicable. To exclude such evidence merely because it is an out of court statement and in this sense fits within the definition of hearsay, is to apply a rule without a reason. The test for the admissibility of out of court statements should be whether there is sufficient opportunity for the adversary to put before the jury the facts neces-

---

[7] Di Carlo v. United States, 6 F2d 364, 368 (2d Cir 1925).

[8] McCormick, *supra* § 251 at 602.

[9] Other reasons for substantive inadmissibility of prior out of court statements by witnesses are sometimes raised. Sometimes emphasis is placed on the value of the oath as a guarantee of veracity. See State v. Saporen, 205 Minn 358, 362, 285 NW 898, 901 (1939). But as already observed, it is generally conceded that "the oath is no longer a principal safeguard of trustworthiness." McCormick on Evidence § 251 at 601 (2d ed 1972). See V Wigmore on Evidence, § 1362 (3d ed 1940); ULA, Uniform Rules of Evidence 63 (3) (1965).

Some also point to the value of jury observation of demeanor at the time the statement is made. *Saporen, supra.* It is difficult to see how this concern is satisfied when the use is for impeachment rather than proof of the truth of the matter asserted. McCormick, *supra* at 601.

sary for it to make a reasonable evaluation of the trustworthiness of the statement. When the declarant is available for cross-examination, the statement may be denied, explained, or modified. The speaker's first hand knowledge and his ability to observe, recall and relate may all be tested in the same manner as if the original statement had been made in court.[⑩]

For the foregoing reasons this court should adopt the rule that a statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter is admissible so long as the statement would be admissible if made by the witness while testifying as a witness.[⑪] To the extent that our prior decisions are to the contrary, they should be overruled.

The rule should not be limited to prior *inconsistent* statements of witnesses, but should be equally applicable to prior *consistent* statements. The rule should be so extended because all of the reasons for admitting prior inconsistent statements can be advanced for admitting prior consistent statements. Of course, the admissibility of either kind of prior statement is subject to the requirements of relevancy and

[⑩] The reasons supporting the admissibility of out of court statements of a witness seem no less telling on this score than those supporting the admissibility of extra-judicial admissions of a party opponent, which have always been an exception to the hearsay rule. McCormick, *supra* § 262 at 628-639.

[⑪] This statement of the rule is adapted from ULA, Uniform Rules of Evidence 63 (1) (1965).

It should be noted that with the use of such evidence no longer restricted to impeachment, it would no longer be necessary to call the declarant as a witness before introducing his prior statement, as was done in the present case. Nor would the rules pertaining to impeachment such as the requirement of surprise as a condition for the introduction of the prior inconsistent statement of one's own witness be applicable.

subject to the evidentiary policies aimed at preventing the confusion of the issues or the undue consumption of trial time.

The majority opinion points to two requirements, one or both of which must be satisfied before an exception to the hearsay rule will be recognized: (1) "Some special circumstances to vouch for the trustworthiness of the out-of-court statement, so as to justify dispensing with the need for cross-examination *at the time the statement was made,*" and (2) "Some necessity for the use of the out-of-court statement, usually as a result of the unavailability of the witness * * *."

The first of these requirements calling for cross-examination *"at the time the statement was made"* is not now acceptable for the reasons explained above.

A little reflection will show that the second requirement has no application to the present case. The majority is saying, in effect, that since certain hearsay exceptions (not all) do not apply unless the declarant is unavailable, we can turn this around and say that if the declarant is available the evidence he would give is not admissible.

The fallacy of this position becomes apparent when it is understood, as McCormick on Evidence, p. 608 points out, that "When unavailability of the declarant is made a condition precedent to admitting his hearsay statement, a rule of preference is in fact being stated." McCormick goes on to explain:

"* * * His personal presence in court, under oath and subject to cross-examination, would be preferred. If, however, that cannot be had, then his hearsay statement falling within the particular

hearsay exception, although admittedly inferior, is still to be preferred over doing entirely without evidence from that source. Thus the group of hearsay exceptions where unavailability is required are in a sense second class in comparison with the far larger number of exceptions where availability or unavailability is simply not a factor." McCormick on Evidence § 253 at p. 608 (2d ed 1972).

Even if the prior inconsistent statement in the present case were regarded as hearsay, it would make no sense to exclude it if the declarant was a witness, but admit it as an exception to the hearsay rule if the declarant was not available.

I would affirm the Court of Appeals.

BRYSON, J., joins in this dissent.