Submitted on record and briefs September 23, affirmed December 24, 1996, petition for review denied March 18, 1997 (325 Or 80)

# STATE OF OREGON,
*Respondent,*

*v.*

# PAMELA KAY BURGESS,
*Appellant.*

## (96-6125; CA A89386)

930 P2d 869

Sally L. Avera, Public Defender, and Eric M. Cumfer, Deputy Public Defender, filed the brief for appellant.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Jonathan H. Fussner, Assistant Attorney General, filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendant appeals her conviction for driving under the influence of intoxicants (DUII), ORS 813.010, and assault in the fourth degree, ORS 163.160. She assigns as error the trial court's denial of her motion to dismiss the complaint based on double jeopardy, the trial court's denial of her motion to dismiss the complaint based on the lack of subject matter jurisdiction, and the trial court's refusal to exclude testimony pursuant to Oregon Evidence Code (OEC) 403. We affirm.

On September 5, 1993, defendant drove a three-wheel, all-terrain vehicle (ATV) into a tree near the intersection of Hill Crest Loop and Big Creek Mainline Road in Clatsop County. Defendant's three-year-old daughter was a passenger on the ATV and was injured in the accident. Defendant was charged by a traffic citation and complaint with the offense of DUII. On February 23, 1994, the state moved to dismiss the previously filed charge and then filed a complaint against defendant alleging that she drove under the influence of intoxicants and committed an assault in the fourth degree. On March 28, 1995, the state moved to dismiss the second complaint and then filed a third complaint charging defendant with DUII and assault in the fourth degree. Those charges were tried to a jury on March 28-29, 1995. The jury returned verdicts of guilty, and judgments of conviction were entered by the court.

■ Defendant first assigns error to the trial court's denial of her motion to dismiss the complaint on the ground of double jeopardy under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. Before trial, defendant's license had been administratively suspended by the Department of Motor Vehicles because her Breathalyzer test result was above 0.08%. She argues that the suspension acts as a bar to the criminal prosecution. In *State v. Phillips*, 138 Or App 468, 909 P2d 882, *rev den* 323 Or 114 (1996), we held that an administrative suspension of driver's license for DUII does not constitute punishment for double jeopardy purposes. We adhere to our reasoning in *Phillips* and reject defendant's argument.

Defendant also assigns error to the trial court's denial of her motion to dismiss the complaint on the ground that the district court lacked subject matter jurisdiction. According to defendant, the district court had no jurisdiction over Class A misdemeanors committed in September 1993 because the legislature enacted Oregon Laws 1993, chapter 680, section 30, which became effective August 18, 1993. However, the Supreme Court has now held that district courts never lost jurisdiction over Class A misdemeanors. *State v. Webb*, 324 Or 380, 927 P2d 79 (1996). Thus, the district court had jurisdiction over both the Class A misdemeanor and the DUII offense.

Finally, defendant argues that the trial court erred by overruling her objections to certain testimony by two different emergency medical technicians (EMTs).[1] At trial, defendant called two witnesses who were with her on the day of the accident. On cross-examination by the state, both witnesses denied telling the EMTs that they had told defendant not to drive the ATV because she had been drinking. Over defendant's objections, the state then called the EMTs, Finel and Smith, as rebuttal witnesses. They testified that they met defendant at the fire station to which defendant had been brought after the accident. Finel testified that the woman who drove defendant to the fire station said, "We had told her that she shouldn't drive [the ATV] since she'd been drinking." Finel did not know the name of the woman who made the statement, but he described the physical appearance of the person who drove defendant to the fire station. Smith testified that the person who drove defendant to the fire station told her that she had told defendant not to drive the ATV because defendant was intoxicated. Smith also could not specifically identify the declarant but described the declarant's physical appearance. Defendant argues that the trial court made no "explicit" analysis regarding the prejudicial effect of the testimony. Further, she argues that, because Finel and Smith could not identify either of the witnesses as the declarant, the impeachment testimony was "unfairly

---

[1] Although defendant assigns as error the court's overruling of her objections on the grounds of hearsay, improper impeachment, and the overly prejudicial effect of the evidence, we address only the latter argument because it is the only argument briefed by defendant.

prejudicial." According to defendant, "[i]mpeachment evidence must be 'reasonably precise' " and this testimony was not.

Defendant's objections were made under OEC 403. It provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by consideration of undue delay or needless presentation of cumulative evidence."

It is well established at common law that testimony of prior inconsistent statements by a witness are admissible and relevant for the purposes of impeachment of a witness' credibility. *State v. Derryberry*, 270 Or 482, 486-87, 528 P2d 1034 (1974); *see also* OEC 613. Our research does not reveal any case in which we have analyzed an OEC 403 issue arising from the proffer of inconsistent statements for purposes of impeachment.

Under OEC 403, there is a two-step process. We must first inquire whether the admission of the evidence creates a danger of unfair prejudice. Second, even if the danger of unfair prejudice exists, the evidence is still admissible unless that danger substantially outweighs the evidence's probative value. *State v. Smith*, 310 Or 1, 20-21, 791 P2d 836 (1990).[2] We review the trial court's ruling for an abuse of discretion and will generally defer to its decision regarding the potential for unfair prejudice, because the trial judge saw and heard the evidence first hand. *State v. Walton*, 311 Or 223, 234, 809 P2d 81 (1991).

■ In this case, both of the witnesses whom the state sought to impeach testified on direct examination about the

---

[2] In *State v. O'Key*, 321 Or 285, 321, 899 P2d 663 (1995), the court said, regarding OEC 403:

" '[U]nfair prejudice' does not mean 'evidence [that] is harmful to the opponent's case—a central reason for offering evidence.' * * * Rather, it means an undue tendency to suggest a decision on an improper basis, commonly although not always, an emotional one. * * * 'Unfair prejudice' describes a situation in which the preferences of the trier of fact are affected by reasons essentially unrelated to the persuasive power of the evidence to establish the fact of consequence." (Citations omitted.)

condition of defendant and that they were present at the fire station when the EMTs were treating defendant. However, both denied on cross-examination that they had warned defendant not to drive. One of the witnesses testified that she drove defendant to the fire station. Finel testified that the woman who he *thought* drove defendant to the fire station was the one who said she had earlier warned defendant not to drive. Similarly, Smith testified that, "The driver of the pickup truck said defendant had a few drinks, and they told her not to ride the ATV because it was unsafe." The jury was entitled to infer from all of the testimony that one of the witnesses was the driver and that she was also the declarant or that the declarant was one of the witnesses but not the driver.

In our assessment, the testimony of the EMTs did not promote a decision by the jury on an improper basis. It merely presented questions of fact, and its weight was for the jury to decide. The trial court did not abuse its discretion in ruling that a sufficient foundation had been laid for the admission of the testimony. *See State v. Miller*, 52 Or App 335, 338, 628 P2d 444 (1981) (holding that the sufficiency of a foundation for a statement impeaching a witness is a matter for the sound discretion of the trial judge). We conclude that the trial court did not err in admitting the testimony of Finel and Smith for impeachment purposes and that the evidence did not create a danger of unfair prejudice.

One other argument of defendant warrants discussion. Defendant attacks the adequacy of the trial court's explanation when it ruled that the probative value of the impeachment evidence outweighed its prejudicial effect. After hearing arguments by counsel, the trial court said, in pertinent part, in making its ruling:

> "And, it sounds like to me it's probably going to be prejudicial, but, I think it's admissible under the evidence code as inconsistent statement. They get to ask that question."

According to defendant, the ruling by the trial court is insufficient to make a record to indicate an exercise of discretion under OEC 403 and the holding in *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987).

In *Mayfield*, the issue was whether the trial court had properly admitted uncharged misconduct where the danger of unfair prejudice was high. The state argued that the evidence was relevant to show why the victim delayed in reporting the crime of sodomy. *Mayfield*, 302 Or at 644. The court held that the evidence possessed some relevance under OEC 401. However, because the uncharged misconduct by its nature created a danger of unfair prejudice, the court established a methodology for trial courts to use in determining whether or not the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

██ In particular, the court held that "[t]he judge errs if the judge fails to exercise discretion, refuses to exercise discretion or fails to make a record which reflects an exercise of discretion." *Id*. at 645. Thus, an exercise of discretion in weighing the danger of unfair prejudice against the probative value of the evidence requires a trial court to apply the following analysis: (1) to assess the proponent's need for the evidence; (2) to determine how prejudicial the evidence may be; (3) to balance the need for the evidence against the unfair prejudice; and (4) to make a ruling to admit all or part of the evidence. In this case, the trial court was not required to undergo that analysis because there was never any danger of "unfair" prejudice. The evidence of a prior inconsistent statement was offered for purposes of impeachment and was material to the issues in the case. Consequently, the trial court was not required to use the methodology set forth in *Mayfield*, and defendant's reliance on *Mayfield* is misplaced.

Defendant's other arguments do not require discussion.

Affirmed.